## Staunton.

STEARNS' EX'OR V. RICHMOND PAPER MANUF'G CO.

SEPTEMBER 17th, 1890.

1. CHANCERY PRACTICE—*Revivor—Continuance.*—Where case is revived at rules under sec. 3309, its revival constitutes no ground for a continuance.
2. WATER RIGHTS—*Grant by deed—Prescription.*—Where party has under claim of grant by deed, been using a greater supply of water than he was entitled to thereunder, he cannot claim by prescription a right to the excess.

Argued at Richmond. Decided at Staunton.

Appeal from decree of chancery court of city of Richmond, rendered August 24, 1888, wherein the Richmond Paper Manufacturing company was complainant, and the appellant, Franklin Stearns' executor, was defendant. Opinion states the case.

*Henry G. Cannon,* for the appellant.

*Christian & Christian* and *W. W. Gordon,* for the appellees.

LACY J., delivered the opinion of the court.

The bill in this case was filed by the appellee, the Richmond Paper Manufacturing company, against the appellant's testator, Franklin Stearns, deceased, on the 25th day of August, 1881, to subject the town lots (Nos. 5 and 7) of the defendant to the payment of water rent reserved thereon in favor of the plaintiff, due and in arrears by the defendant to the plain-

tiff company, and to have a determination and adjudication by the said court of the exact nature, status, and extent of the water rights and privileges pertaining and belonging to the said lots, or to the said defendant, Stearns, as owner thereof.

The answer of the defendant sets forth, at length, the relations of the plaintiff company and the defendant; and, admitting the allegation of the rent of $300 reserved upon the lots of which he is the owner to the plaintiff company, as the successor of his grantor, alleges that a greater rent has been demanded of him than the said $300, or than the amount that was, in fact, due for water rent; that the plaintiff had exacted a very much larger water rent from the said defendant, upon the pretext that it, the said plaintiff company, had obtained a greatly-increased supply of water from the grantor of such water supply, the James River company, as it was then called, or its successors, while, by the terms of the original grant to the said plaintiff, or its predecessors, the said defendant's predecessors were entitled to all the water supplied to the said plaintiff or its predecessors.

The evidence was taken in the cause, and the contention of the plaintiff company was that, by the terms of the original grant, the supply of water to which the defendant was entitled, as the owner of lots Nos. 5 and 7, was limited to one hundred square inches of water, at a pressure or head of four and a half feet; and for this a rent of $600 had been reserved, of which the owner of lots Nos. 5 and 7 was to pay one half, the $300 demanded, with an option of not more than fifty square inches at a similar pressure; that the plaintiff, finding this grant wholly inadequate, when it came to be accurately measured, had purchased a larger supply of water than the said one hundred and fifty inches, and agreed to pay for the same, a much greater sum as rent; that the said defendant received this increased supply of water, and claimed the right to do so without the payment of the additional rent, or any part thereof; the

defendant claiming, as to this, that the supply of water alleged to have been purchased by the plaintiff, in excess of the said one hundred and fifty inches, was the same supply, and no more, than the said defendant and his predecessors had been receiving for more than forty years, and that, if more than that was granted, it had been delivered for more than fifty years, and the right to this quantity had grown up by prescription, and, by adversary possession, he and his predecessors had a title to the water which flowed, and had flowed, for this time, and he was protected from the claim of the plaintiff by the statute of limitations, limiting the entry on or action for real estate.

The chancery court of the city of Richmond, at the hearing, was of opinion, and decided, that the defendant, as the owner of lots Nos. 5 and 7, mentioned in the proceedings, was entitled to receive twelve cubic feet of water per second, being the equivalent of one hundred and fifty square inches of water, through the present course or channel, and decreed that the plaintiff, the Richmond Paper Manufacturing company, its successors and assigns, should, at all times, permit the said twelve cubic feet per second of the water flowing to their premises to flow to the said lots, (Nos. 5 and 7) without obstruction in the course or channel in which the water now flows to the said lots; and that the said defendant was not, either as owner of said lots Nos. 5 and 7, or otherwise, entitled to receive from the Richmond Paper Manufacturing company, its successors and assigns, any water now or hereafter flowing to their premises, in excess of the quantity thereinbefore specified and decreed; but that, as to any such water in excess of the quantity before specified and decreed, the Richmond Paper Manufacturing company, its successors and assigns, should have the right, at all times, to divert such excess of water, and to use the same as their own, free from any claim of the defendant, and decreed that said lots, (Nos. 5 and 7) should be subjected to the payment of the said water rent demanded, as due and in arrears; and, in default of the payment of this sum on or before the 1st

day of May, 1889, following, decreed a sale of the said lots, or so much as should be necessary to pay the said sum in arrears for rent due and unpaid. From this decree the defendant applied for and obtained an appeal from one of the judges of this court.

The first error assigned here to be considered, is the refusal of the court to grant a continuance of the case, upon the motion of the defendant, to the January term of the court, 1889, upon the ground that the motion was made at the October term, 1888, of the court, in November, the first term after the cause had been revived against the defendant by *scire facias*, and when he was before the court for the first time; that the motion was made under the statutory right conferred by sec. 3308 of the Code of Virginia; that the defendant had a right to a continuance, and that it was arbitrary to refuse it. Sec. 3308 provides, as to the revival of a cause against the personal representative, or heir, or devisee of a decedent, who was a party defendant, that after service of the *scire facias*, if no sufficient cause be shown against it, that an order shall be entered that the suit proceed according to such *scire facias*, and that any such new party may have a continuance of the case at the *term at which such order is entered*, &c. This section refers to such cases as are revived by an order entered in term. But the section following, (3309) provides that "the clerk of the court in which the case is, may issue such *scire facias* at any time, and *an order may be entered at rules* for a case to proceed against the proper party, although the case be on the court docket." This case was revived at rules, and so the 3308th section does not apply to it; and, having been revived at rules, its revival constituted no ground for a continuance, and there was no error in this action of the court, there being no valid ground alleged upon which to entitle the defendant to a continuance.

But the chief assignment of error here is as to the action of the court in holding that appellant is entitled not to all the water received by the appellee, but only to the one hundred and fifty

square inches of water at a head or pressure of four and a half feet. In support of this assignment, it is set forth that, prior to 1834, one Hall Neilson, was the owner of a considerable body of land in the city of Richmond, known as " Neilson's Addition," lying south of the basin of the old James River canal company, south of the old town line, and extending down to the canal which supplies water from James river to Haxall's Mills. He also owned other lands adjoining " Neilson's Addition," to the north, and certain rights of way, which enabled him afterwards to connect " Neilson's Addition," by a canal or mill-race, with the water in the basin of the James River company; that most of his land lies below the level of the water in said basin; that there is a fall from said level to the northern margin of Haxall's canal of fifty-two and seven-tenths feet; and to obtain a supply of water from the canal for the purpose of enhancing the value of this land for mill-sites and manufacturing purposes, that the said Neilson did, on the 27th day of February, 1834, succeed in making a contract with the James River company, for a perpetual grant of one hundred square inches of water, to be delivered to him on the south side of their basin, between Eighth and Tenth streets, under a head or pressure of four and a half feet, for the annual rent of $600; that this contract was afterwards put into shape by the making of an indenture, dated the 14th of May, 1834, between the said James River company, of the one part, and the Franklin Manufacturing company, of the other part, to which said Neilson had assigned his contract for water-power. On the same day, (14th May, 1834) Neilson and wife, by deed, (which recited that the water-power to which Neilson was entitled by reason of his contract with the James River company would, with his consent, be conveyed by the said James River company, directly to the said Franklin company,) conveyed to said Franklin company, four lots of land, designated on the plat as Nos. 5, 6, 7, and 8. By this deed, Neilson agreed, at his own expense, to construct a canal, from four and a half to six feet deep, and twelve feet wide, from the

basin of the James River company, to a point forty-two feet south of the old town line, which point is directly in front of the lots conveyed to said Franklin Manufacturing company. That for these lots, this canal, and this transfer of his contract with the James River company, Neilson stipulated only for, and the said Franklin company covenants to deliver to him "the water from the mills and factories to be erected and worked by the said Franklin Manufacturing company, their successors and assigns, on the lots hereby conveyed," on the north side of Canal street, at the depression or fall of forty-two feet from the ordinary level of the basin, and then become the exclusive property of the said Neilson, his heirs and assigns, and that this is a covenant running with the land, and which enures to the benefit of the owners of the land upon which this water was to be delivered; that the appellant is the owner of this land, and that this water has been delivered to him, and those under whom he claims, by the Franklin Manufacturing company and its successors, the appellee, without interruption, at a fixed and permanent point, pursuant to said covenant, for a period of more than fifty years; that there never was any street here, but the proposed street, which, never having been accepted as a street, nor used as such, was the land of the appellant. That it becoming apparent that it was an impossibility ·to deliver this water at the specified head or pressure, a controversy arose between the millers and manufacturers on the Richmond level, on the one hand, and the canal company on the other, as to the quantity of water to which the former were entitled under their contract with the James River company, and in 1837, the James River and Kanawha company, the successors of the James River company, applied gates to the different establishments, limiting them to the exact quantity of water to which they were respectively entitled; that this action was acquiesced in by the Franklin company and the James River company and its successors, for a period of forty-four years, without any attempt on the part of any party to disturb this practical set-

tlement of the rights of parties under the contract of 1834. That nine years after this, in 1846, the Franklin company conveyed, for the sum of three thousand dollars, and an annual water rent of $300, or one-half of the annual water rent reserved by the James River company, lots 5 and 7, to the Broad Meadow Mining and Manufacturing company; that these lots were sold to Franklin Stearns, deceased, and by him devised to appellant, and that in 1854, a deed was entered into by these parties owning these lots, 5 and 7, and 6 and 8, and the land and lots south of 5 and 7, and other co-terminus owners, which declares that the flow of water in the said canal, the right of which now belongs to said Neilson and his assigns, including the owner of lots 5 and 7, should not be obstructed; that the designated quantity of water of one hundred and fifty inches, under a head or pressure of four and a half feet, was not now mentioned, and that said quantity was never sufficient, nor more than enough to run a good-sized threshing machine, and this original agreement was thus *discarded* and relegated to its original nothingness.   That although Franklin Stearns, in his answer, claimed that he was not getting more than the agreed quantity of water, it has since been proved otherwise, and is now admitted; that when the deed of 1834 was executed, none of the parties had any adequate conception as to how much power one hundred square inches of water, under such pressure, would produce, and that such quantity of water was not worth then, under present prices, fifty dollars per annum; that Franklin Stearns held and used this water without hindrance for all the years until 1880, when the Richmond Paper Manufacturing company, the appellee, and the successors of the Franklin Manufacturing company, made a compact with the Richmond and Alleghany railroad company, the successor of the James River and Kanawha company, by which they made a new contract for water supply, in which a stipulation was inserted, by which the latter had the right, upon three months' notice, to require the Richmond Paper company to divert the water

flowing from the Richmond Paper company's mill away from the Stearns property, lots 5 and 7, and the lots lying to the south of them; that Stearns was no party to this, and was not bound by it; that upon the demand upon Stearns for the $300 for the rent for one hundred square inches of water, he refused payment, upon the ground that he was entitled to all the water which flowed from the said paper mill, and not simply to the one hundred square inches of water, by reason of his ownership of lots Nos. 5 and 7, and the lands lying south of them, derived from Hall Neilson.

It thus appears that it is conceded that, by original grant, the Franklin Manufacturing company was entitled to the one hundred inches of water, and the option of fifty more; that the grantee of the said company, the Broad Meadow company, was to receive the same. But it is contended that as this was inadequate, and is still inadequate, the appellant is entitled, by reason of long use, to the larger supply, without paying a larger sum than was originally agreed to be paid for the smaller and inadequate quantity, and this because the contract for the supply of water was a covenant running with the land in the hands of Neilson and his successors.

The right of the appellant to the one hundred inches, and the option of fifty inches additional, is not denied by the appellee, but conceded. But the appellant company, finding, upon investigation, a fact which is now conceded by both sides, that the amount of water to which it was entitled under its contract, by which it held its water rights, was insufficient for the purpose for which it was wanted, made a contract for a greater and a sufficient quantity at an increased price, and now insists that the appellant, if he has the benefit of this increased supply, must contribute his one-half of the cost of the same, under the deed of November 6th, 1846, by which lots Nos. 5 and 7 were granted. That the right to the flow of this water over the servient tenement lots Nos. 6 and 8 is strictly an easement, must be admitted—that is, a privilege without profit, which

the owner of the dominant tenement has a right to enjoy in respect to that tenement, in or over the servient tenement, which is the property of another person, by reason whereof the latter is obliged to suffer this flow of water over his own tenement for the advantage of the owner of the dominant tenement. It is an easement created by deed, and is an indefeasible right in the owner of the dominant tenement. This easement is imposed upon the servient tenement, which must be suffered by the owner of the said tenement. It is not a covenant to deliver the flowing water to the grantee simply, but to him at a particular place on a particular piece of land, and it was intended to, and it is admitted did, enhance its value. It could not, by its nature, be otherwise delivered than as appurtenant to the land upon which it was to be delivered, and it inheres in the land, and, running with it, passes to successive alienees. And as to this, we think it is immaterial whether Canal street is to be considered a street or not; the right of the public to its use as a street would still leave the title to the land unchanged.

But in this case it is clear, from the evidence, that this attempt to dedicate this street was abortive, as it was never accepted by the public as such, and, by mutual agreement, afterwards abandoned. But granting all this to the contention of the appellant, and conceding his title to the claim which he holds by grant under his deed, where are his rights? Clearly, such as are set forth in his deed. If therein he did not contract for enough water for his purpose (*which he now distinctly admits, although denied in his answer*), what valid claim has he to more *under that contract?* Of course, none! But he claims, by reason of user for a long time, by prescription—that is, I suppose, that a grant to the effect claimed will be presumed. But what presumption can be made as to a grant which is by deed, other than by terms of the deed? This deed, and all the deeds, define rights, and limit them at the same time that they maintain them. His easement is by deed, and is such as the deed conveys. Nothing more can be intended, for a right can

be acquired by prescription only where a grant can be presumed. If this alleged user had been inconsistent with an existing easement, however acquired, and had been submitted to by the dominant owner for a period of sufficient duration to establish an adverse prescriptive right, the law might presume that the original easement had been released and extinguished, and right to the new and inconsistent easement might be upheld. While inconsistent easements cannot co-exist, one easement of a character inconsistent with another may be created subordinate to the latter, and in that manner the two may co-exist. Thus, if one man has a right to the uninterrupted flow of the water of a stream to his mill, another may have a right to divert the water when it is not, required for the mill. But here the easement claimed was asserted and enjoyed under the grant, and a greater flow of water than that flow which was granted was in no way inconsistent with the granted flow, which latter was claimed, and that only by the appellee, and those under whom he claims, continuously and during the progress of this suit. And no other and no greater easement was claimed in the answer and cross-bill of the defendant, and it was only after the testimony of expert witnesses had been taken, and the true magnitude of the flow settled to the satisfaction of all parties, both plaintiff and defendant, that the claim is set up that the granted flow of water was inadequate, and that, as more had always flowed than what was granted, a new right had been acquired. This may be true; but if true, the defendant did not know it at the time he filed his answer and his cross-bill. He claimed then, and, indeed, always did claim, a right such as was granted, and never at any time asserted any claim inconsistent with the terms of the deed, and there appears to have been no adverse user or enjoyment claimed at any time inconsistent with the deed.

As the grantee of the lots Nos. 5 and 7 in the plat or plan [which is filed with this opinion], the appellant's testator is entitled to have the benefit of any increased supply of water

which the appellee obtains, upon the condition of his paying one-half of the cost thereof; but he is not bound to pay for a greater additional quantity of water than fifty square inches under the stated circumstances of head and flow. If any greater quantity is obtained by the appellee, as is admitted, and the appellant will not, as he is not bound to do, contribute his one-half of the rent therefor, he then has no valid claim to this increased supply of water, for which he thinks best to contribute and pay nothing. In that view, the decree of the chancery court is right, because he (the defendant) distinctly refuses to pay for this additional supply of water.

But the right of the appellant to receive all the water which flows through this Neilson canal, upon payment of his one-half of the rent of the same, must be maintained; and, to that end, he has leave to institute proper proceedings in the chancery court, within a reasonable time, in this suit, if he shall be so advised; without which he is entitled to receive only the amount originally contracted for, and for which he must pay according to the terms of the said decree.

The decree appealed from will be in this court amended, as above indicated, and, as amended, affirmed.

LEWIS, P., and FAUNTLEROY, J., dissented.

DECREE AFFIRMED.