Reed, P. J.,
delivered the opinion of the court.
Mrs. Gibson is the widow of Eli P. Gibson. In the year 1885, Mr. Gibson and wife settled upon the unsurveyed land of the United States on what had formerly been the Ute Indian reservation, the title to which had been obtained by treaty with the tribe.
On the 22d day of April, 1885, the township within which the settlement was made was opened for settlement and occupation under the preemption act of 1841. By the terms *107 of the Ute treaty, title could only be acquired by preemption and purchase at $1.25 per acre, the proceeds of sales to be a fund held in trust by the government for the benefit of the Ute Indians.
It appears that the settlement of Eli P. Gibson was made November 5, 1884, and on the first day that the land office was open (April 22, 1885) he filed his declaratory statement in the United States land office. Owing to erroneous surveys, on the 17th of August, 1885, the land in the township was withdrawn by the government, and remained so withdrawn until June 29,1898. Eli P. Gibson died October 28, 1887. His widow (appellee) remained upon and has continuously occupied the land filed upon by her former husband.
On the day the land office opened (June 29, 1893), she filed a preemption claim in her own right upon the land, and on the 7th of October, 1893, proved up upon the land, and received a receipt from the receiver of the United States land office.
On the 1st day of July, 1881, Wm. Forker settled upon the land adjoining that of Mrs. Gibson on the south. He made extensive improvements, put 100 acres under cultivation, and remained in the possession and occupation of the land until October, 1888, when he sold his possessory right to Wm. E. Graham, who entered upon and occupied the land until October 9, 1892, when he sold and delivered the possession to George H. Forker, who remained in the occupancy and possession, and on August 7, 1893, filed upon it, and on February 12, 1894, proved up, paid for it and received a receipt from the receiver of the United States land office. Both the Gibson and Forker claims were extensively improved and cultivated after 1885, and in that year were inclosed by substantial fences on the exterior lines, but without a division fence between them. Upon the lands of Gibson and Forker was the bed of a lake, or natural basin that filled with water from the melting of ice and snow. The water was retained by an elevation or natural dam at the lower end. It was in extent about 87 acres, 75 of which *108 was on the Forker place and 12 on the Gibson place. When not covered by water, it was swampy and unfit for cultivation.
In 1885, the parties jointly cut a drain through it and the elevation at the lower end, reclaimed the .land, and it became a meadow from which hay was cut annually.
Appellant’s rights, as stated in the complaint, are as follows : “ That since the first day of April, 1889, he was the owner of and entitled to the possession and enjoyment of a certain tract or parcel of land in Garfield county * * * [description] * * * containing 160 acres; that without irrigation no crops could be produced on said lands; without irrigation the whole of said land would be valueless.
“ That for said purposes of irrigation plaintiff on or about the 3rd day of April, 1889, constructed a reservoir on the S. E. 1/4 of section 24, Tp. 6 S., R. 89 W., and duly filed in the office of the recorder of Garfield county a plat and statement of said reservoir site, claiming said land for reservoir purposes. That a portion of the land covered by the water stored in said reservoir is in section 19, Tp. 6 S., R. 88 W.; that at the time of the location of said reservoir site, the survey of said Tp. 6 was suspended, and has ever since remained and now is suspended, and by reason of said suspension of said Tp. 6 aforesaid, that portion of said reservoir site does not appear on said plat of said reservoir site.”
The land claimed by appellant lay below to the west of the claims of Gibson and Forker 80 rods, two 40 acre tracts of vacant land lying between them.
The map referred to as showing the plat and statement of the reservoir and the claim of appellant, which was filed in the recorder’s office, is in evidence, made by J. G. Kune, a civil engineer.
The reservoir, as shown, is about 600 feet long in greatest length, and 500 feet wide in greatest width;—does not extend over the line of Gibson and Forker. Its upper end is 500 feet from the lower end of the old lake bed, and is platted *109 as being entirely upon vacant public land. In the recorded statement filed it was said:
“All of said reservoir site lies in the 1ST. E. 1/4 of S. E. 1/4 of section 24,” etc., clearly indicating the absence of any intention of appropriating any land of Gibson and Forker, which was in sections 19 and 29. The reservoir as platted and filed covers about five acres.
On August 1,1889, appellant filed with the county recorder a supplemental or additional statement, not verified or accompanied by a'map or plat, claiming “ a reservoir site not exceeding 120 acres on sec. 19,” and on the same date (August 21, 1889) he prepared and filed in the office of the county recorder “ a notice to the world, * * * that he was entitled to the use, occupation, enjoyment and possession of and all that portion of the unsurveyed public domain included within the bounds of what was formerly sections 19, 20, 29, 80, 32 and 33, in township 6, and section 4 in township 7,” etc., which included farms in the actual occupancy of parties who had been in possession several years, among them those o£ Gibson and Forker. This wholesale appropriation of 4,480 acres of land was, as claimed, for the purposes of irrigating his farm.
In March, 1895, six years after his alleged appropriation, he testified: “ I claim to own the water by appropriation and usage. In 1890 I used a little; in 1891 and 1892 I used most of it and in 1893 I used a little. I never used all the ivater because I am not prepared and fixed yet. I intend to take up a desert land claim as soon as I can get this suit settled, so I will need all the water and more than there is there.'1''
This action was brought by appellant to recover damages for an alleged trespass and injury to his reservoir by appellees. The alleged wrongs and injuries are stated as follows :
“ That plaintiff has had the quiet, peaceable and undisturbed possession of said reservoir and use of water collected therein at all times since the third day of April, 1889, until April, 1893. That Mrs. Tillie Gibson claimed that a portion of certain land claimed by her and covered by said reservoir *110 site was overflowed, and threatened that she would endeavor to defeat plaintiff’s right to hold and maintain said reservoir site, built a fence across said reservoir site, and is continuing to build fences across said reservoir site, and that she forbid plaintiff the right to enter upon said land so occupied as said reservoir, to take care and protect the same, and that she, the said defendant, has conspired and is now conspiring with the said W. E. and George Forker, the other defendants herein, and others, to injure and destroy said reservoir and to deprive said plaintiff of the use of the waters collected and stored therein by causing a great quantity of water to be discharged into plaintiff’s reservón'. That the claim of Mrs. Tillie Gibson is subsequent and subject to plaintiff’s reservoir right. That on or about the 2nd day of April, 1893, William E. Forker and George Forker, two defendants herein, constructed a dam above the lower part of said reservoir, with the knowledge of said Mrs. Gibson, and upon the land claimed by her, in such a poor and temporary manner as to be unsafe and insufficient to hold the water collected thereon, and that after said dam was so constructed and was about filled with water, it gave way and discharged a large volume of water into the lower part of said reservoir of plaintiff, causing the damage thereto. That said dam was constructed solely for the purpose of destroying plaintiff’s reservoir, and depriving him of the use of the water. That neither said William E. Forker or George Forker had any interest in or to any land embraced in said reservoir, and said dam was built by said Forkers against the protest of plaintiff. That a further trespass was committed on the 27th day of April, 1893, by the interference with the reservoir outlet, which caused a great loss of water out of said reservoir. That by reason of the premises plaintiff was damaged in the sum of $200. That defendants have-threatened to and will continue said acts complained of against plaintiff’s reservoir. That plaintiff cannot obtain water from any other source to irrigate his land, and without water to irrigate it said land is valueless. That defendants are insolvent and have no property out of which an execution could *111 be satisfied. That plaintiff’s only remedy is by injunction. Plaintiff prays judgment against defendants for the sum of two hundred dollars damages, costs of suit and injunction.”
On May 24,1893, appellant filed the following supplemental statement as an addition to his former complaint:
“ That since filing complaint on the 11th day of May, 1893, and service of summons, one of the defendants, Mrs. Gibson, disregarding plaintiff’s rights in his reservoir and water stored therein, did on the 23rd day of May, A. D. 1893, enter upon said reservoir, dug up the ground and interfered with the natural flow of water into said reservoir.”
Mrs. Gibson filed a separate answer, which, after denying some of the allegations of the complaint, is as follows :
“ She admits that plaintiff did construct an embankment on unoccupied land west of the land of defendant. The defendant admits being the widow of one E. P. Gibson, deceased, who died on the 26th day of October, 1887, and then states what is hereinafter reiterated in the cross complaint, and admits that she has complained of and protested against said plaintiff’s attempting to overflow a portion of said tract of land by virtue of said reservoir, and she threatened to prevent plaintiff’s appropriation of said land, and she admits that she has forbid plaintiff many times the right to enter upon said tract of land or any portion thereof fox-reservoir pux-poses. She alleges that she had a right to whatever she did do or caused to be doixe in regard to the flow of the water through plaintiff’s reservoir .down the natural channel where.the water had been wont to flow and drawn off of defendant’s premises, and that any obstructions that plaixxtiff has or may attempt to' prevent the natural drainage and escape of water from defendant’s px-emises are in violation of defendant’s prior rights.”
Also a cross complaint, as follows:
“ That Eli P. Gibson, the husband of the defendant, settled upon the tract of land described iix folio 116, as his home and preemption claim, which the defendant, Mrs. Gibson, now claims; that in the year 1885 she went, on said *112 premises to reside with her husband, said Gibson; that prior to the 22nd dajr of April, A. D. 1885, said land was all unsurveyed public domain of the United States; that on that date the township in which said land was situated was opened for filing for the first time in the United States land office at Glenwood Springs, on which day said Gibson filed his declaratory statement in said land office for said tract of land, which was then described by the survey then in force [description of property], and being the same land upon which this defendant made her home and preemption claim ever since said filing on the 29th day of June, 1893, [see folio 119] ; that the survey of said township was suspended from the 17th day of August, 1885, until the 29th day of June, 1893. That defendant filed her declaration of occupancy and possession of said land. That in her declaratory statement the land is described as [description of property], and on the 7th day of October, 1893, the defendant, Mrs. Gibson, made final proof on said land and obtained a receiver’s receipt. That defendant has made improvements in cultivating and farming said premises and in building ditches to irrigate said land, and fenced said lands, and if she should be deprived of the land claimed by this pretended reservoir site she would be irreparably damaged. That some time in the spring of 1889, the plaintiff herein, at a point on government land below and westerly from this defendant (Gibson’s) land, commenced doing some work toward making a dam; that this defendant, fearing that this dam, if raised to any considerable height, might cause water to back upon her said land, immediately notified said plaintiff in writing not- to construct any dam or locate any reservoir which might back water onto any portion of her land, and this defendant has frequently since said time notified plaintiff not to build any reservoir that would affect or in manner back water on said premises; that notwithstanding defendant’s protests plaintiffs with full knowledge of this defendant’s rights the plaintiff with full knowledge of the defendant’s prior rights in said premises has gone ahead from time to time and constructed a small dam at said point; that *113 this defendant’s land naturally slopes and drains off to the westerly in a well defined channel, and that said dam obstructs the natural channel and flow and drainage of the water off of this'defendant’s said lands where in the natural channel that the water has immemorially flowed off of said land, and if said dam is built or maintained in its present position it will further dam up and obstruct the natural channel of the waste, excess and all water from the defendant’s said land, and cause said water to back up onto her land and thereby greatly damage said land and injure the crops of this defendant, and said dam is and will be a continuing damage, injury, menace and nuisance to this defendant and greatly depreciate the value of her said property.
“This defendant then alleges the filing of a pretended plat and statement of his reservoir by plaintiff on June 3, 1889, with the clerk and recorder of Garfield county, Colorado, and afterwards and on the 21st day of August, 1889, made and filed an alleged supplemental statement of his pretended reservoir, said statement not being accompanied by any plat and not being sworn to; that said plat shows said reservoir as being entirely on government land, but plaintiff is trying to appropriate part of this defendant’s land, without bringing any condemnation suit; or without acquiring any right in any manner to appropriate said premises, and all of said acts of plaintiff are in violation of this defendant’s prior rights and without her consent, and thereby destrojdng a large portion of this defendant’s land and rendering a large portion of her land valueless, to her great and irreparable injury, whereby this defendant will be damaged in the sum of nearly, if not quite, $2,000, if plaintiff is allowed to further construct and maintain his dam; and this defendant has already been damaged by the unlawful acts of the plaintiff in the sum of $250; that plaintiff has recently caused to be backed up water on defendant’s premises overflooding her hay land and greatly damaging the same, and threatens to continue to wrongfully overflow and flood her said land and *114 destroy her hay crop, and to prevent defendant from cutting her hay this year off of said land.
“ This defendant alleges that since the commencement of this suit,_, 1893, the plaintiff has filed other and further pretended reservoir plats and statements for his reservoir site and attempted to embrace a portion of this defendant’s land; that said filed and recorded documents are a cloud ■upon this defendant’s title to her lands, and tend to depreciate the value thereof.
“ The defendant, Mrs. Gibson, for a second and further cause of action, alleges :
“ That there is a kind of basin or low portion of land running through the land of the defendant George Forker and onto the land of this defendant; in the spring of each year the melting snow water collects in said basin, and unless drained would form a large pond and slough on the land of •this defendant, and the defendant George Forker, with Eli P. Gibson and William Forker, made a ditch to drain between the years 1881 and 1885, said drain ditch running westerly and northwesterly down the natural channel for said water for one third of a mile and into a gulch or ravine sufficient to drain said slough, thus rendering the land valuable for crops; that this drain ditch continued to draw off said water until the building of the embankment by the plaintiff. That since the bringing of this suit in October, 1893, the plaintiff filled up said drain ditch, making an impassable dyke for about 20 feet in length, so as to prevent all water, except a very small amount, from going through said ditch; that plaintiff’s act in filling up said ditch was a trespass upon this defendant’s property. That plaintiff is insolvent and had removed his family and personal effects out of the country, and that defendant has no plain, speedy or adequate remedy at law in the premises. That the damage done and which will be done by plaintiff unless restrained by order of this court, is great and will be very great and irreparable, and that by reason of building said dam across said drain *115 ditch defendant has been damaged in the further sum of nearly, if not quite, $250.
■“ Wherefore defendant prays judgment against the plaintiff (1) requiring plaintiff to take away said dam in said drain ditch and the dam-across the natural channel which drains this defendant’s land; (2) for a temporary writ of injunction enjoining plaintiff and all persons acting under him from further constructing or maintaining said danis, etc., etc., and that said plaintiff may be compelled, at his own expense and without delay, to remove said dams or embankments in order to permit the free flow of said surplus water off of this defendant’s land and from hindering or delaying this defendant from the free use and enjoyment of every portion of her premises, and for an order enjoining and restraining plaintiff from making any record or filing anjT claims of any kind to any portion of defendant’s said land for a reservoir site or any other purpose, or from further beclouding the defendant’s title to the premises, and that upon final hearing said injunction be made perpetual.
“That said plats and statements, so far as they affect defendant’s said land, may be cancelled, etc., etc., for $500 damages and for costs of suit.”
The answer of Wm. and George H. Forker is as follows:
“That they have not information sufficient upon which to base a belief as to whether or not plaintiff is entitled to the tract of land in question as a reservoir site since April 8, 1889; or whether plaintiff located said reservoir at that time, and therefore deny the same, and claim said location is absolutely void against defendants’ long established rights ; defendants deny that the land embraced in the reservoir site was a part of the public domain of the United States since July, 1881; deny that the plaintiff has expended $1,500 in the construction of his reservoir, ditches, etc., or that there is 600 acres of land lying under said reservoir site; they deny that they have no right, title or claim to any of the land in the vicinity or said reservoir site; they deny that on the 27th day of April, 1893, or at any other time, they moved *116 or caused to be moved the gate or outlet of said reservoir, or that plaintiff is damaged by their acts; defendants deny that they constructed a dam for storing water so as to destroy plaintiff’s reservoir and dam, or that same was poorly constructed so as to be unsafe.”
And the following cross complaint was filed by George H. Forker:
“ That about July 1, 1881, the defendant William Forker located and settled upon a tract of land containing 160 acres, part of the unsurveyed public domain, but since surveyed and described as lots Nos. 6, 7, 17 and 19 in section 29, lots Nos. 7 and 8 in section 30, in Tp. 6 S., R. 88 W., 6th P. M., in said Garfield county, Colorado, situated above and in the immediate vicinity of plaintiff’s reservoir; that William Forker made said land his home, improved it, built drain ditches and made it of great value for agricultural purposes; that a large portion of said land covers the bottom of a former lake and is almost a natural reservoir, sufficient to store and hold the water from the melting snow in the spring so as to thoroughly saturate and irrigate the meadow land thereof, and that unless the surplus water is drained off of said land immediately after such thorough irrigation it becomes worthless for agricultural purposes ; that for the purpose of draining off said surplus water the defendant William Forker constructed a drain ditch in the years 1881 and 1882, so as to cause said water to more perfectly flow through its natural channel.
“ That said William Forker continued to use, hold and enjoy said land and improvements until in October, A. D. 1888, when he sold his possessory right to William E. Graham, who constantly occupied and improved the same until about the 9th day of November, 1892, when he sold all' his interest in said land to George H. Forker, who has held, occupied and improved the same ever since; that as soon as the survey of said land was approved, the defendant George H. Forker filed his preemption statement in the United States land office at Glenwood Springs, Colorado, he being a citizen *117 of the United States over the age of 21 years, and entitled to the preemption right.
“That the dams and dykes built by the plaintiff for his reservoir are so constructed as to obstruct the natural outflow of water from said defendant’s land and to overflow and flood about seventy-five acres of his lands, and to destroy defendant’s hay crop; and did during the months of May and June, 1898, prevent the proper flow of water, and cause the same to remain on defendant’s growing crop to his damage in the sum of $300.
“ That between the 1st and 6th days of October, 1893, plaintiff constructed another dam across defendant’s drainage canal so as to completely obstruct and dam the overflow of any water from said lands, when the same became stored thereon to the damage and ruin of defendant’s hay crop; that the said dams are a standing.and perpetual nuisance to the defendant and others interested in the drainage of said lake bottom.
“ That by the backing up and detention of said surplus water in May and June, 1893, defendant was further and permanently injured in the sum of $200.
“ That plaintiff still maintains the dams and dykes to said reservoir and threatens to maintain them permanently.
“ Wherefore defendant George Forker prays (1) that plaintiff be required to remove said dam; (2) that plaintiff be pefpetually restrained by injunction from maintaining or. further constructing or repairing said dams, dykes, reservoirs or other obstructions that may obstruct the natural flow of water from defendant’s land; (3) that defendant recover from plaintiff $500, his damages and cost; (4) for general relief; and (5) that William Forker have judgment for costs.”
On December 4, 1893, the court allowed an interlocutory injunction to appellees restraining appellant from obstructing the drain ditch or in any way interfering with the flow of water from the land of appellees; also made an order, mandatory in character, that appellant should within 30 days open the drain ditch and make openings through the embankment *118 built by him, and in case of his refusal appellees were allowed to do the work at the expense of appellant.
“ On March 24, 1894, plaintiff filed, his replication to the separate and amended answer and cross complaint of Mrs. E. P. Gibson, which is a denial of the matter set up in said answer and cross complaint and denies that the defendant Mrs. E. P. Gibson at any time prior to the 29th day of June, 1893, made her or any preemption claim to the land now claimed by her; and plaintiff says that on the 29th day of June, 1893, said defendant Mrs. Tillie Gibson abandoned all right and claim to said land and improvements thereon as the heir or successor of the said Eli P. Gibson, and then and there claimed and filed on said land in her own individual right, and denies that the defendant Gibson filed with the clerk and recorder of Garfield county her declaration of occupancy and possession until after the commencement of this action.”
On the same date replied, denying the allegations of the answer and cross complaint of the two Forkers.
On the 8th day of March, 1895, the ease was tried to the court without a jury. The court found all the important issues of fact for appellees, granted the relief prayed, and decreed a perpetual injunction. From such decree an appeal was prosecuted to this court.
The judgment and decree appears to have been fully warranted by the evidence. The Forkers’ title and possession ran back to 1881, and during all that time had been occupied by the elder Forker, then Graham, then the younger Forker. Mr. and Mrs. Gibson entered into the possession of the land in 1885. In 1887 Mr. Gibson died without being able to obtain a title by reason of the land having been withdrawn. Mrs. Gibson remained continuously in the occupation and possession until 1893, and obtained title at the earliest possible date, and George H. Forker a few months after.
At the time (in 1889) that appellant entered upon and claimed the right to occupy the land below, the lands of Forker and Gibson were inclosed with a substantial fence, each had near 100 acres under cultivation, and had jointly *119 drained and reclaimed the old lake bed and converted it into meadow.
The first effort of appellant in the way of a reservoir was the filing a plat of one four or five acres in extent on vacant land of the United States. His next effort was to file an amended claim to 120 acres of the land occupied by appellees, and a declaratory statement of seven sections, involving all the farms in the valley. His first practical act to make a reservoir was to fill and dam the drain ditch dug by appellees, set the water back, again submerge the old lake bed, destroy the meadow, making of it a reservoir, the water to be drawn off and used at some point below; and although, in 1895, he testified to having constructed^ miles of ditch, it was also shown that such ditch was not constructed to irrigate his land, but to carry water by and below for some undefined purpose, presumably for the purpose of sale. It will be observed that in its inception the declared purpose was to irrigate his land, without which the land was valueless ; yet after six years of alleged occupation, he had put but a few acres under cultivation, and stated in his testimony that he intended to get'land under the “ Desert Land Act” upon which he could use the water. From his settlement in 1889 until 1891 he appears to have attempted to proceed under the irrigating laws of the state. After the passage by congress of the act of March 8,1891, in regard to ditches, canals, reservoirs, etc., upon the public domain, he attempted to base his right and construct a reservoir under its provisions. A more fatal misapprehension of the law cannot be conceived. It had frequently been held that the act only applied to vacant and unoccupied land. By the wording of the act, the rights of occupants who are in possession without title are respected and protected, the last clause of section 19 being: “ Whenever any person or corporation, in the construction of any canal, ditch or reservoir injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured, for such injury or damage.”
*120 The suit was brought by appellant to assert and establish certain supposed equitable rights and also to recover damages for the alleged infraction of those rights. No offer was made to do equity, to make compensation for injury to the possession prior to 1893. Subsequent to 1893, and for nearly two years before the trial occurred, appellees had the title, the fee, and the effort was to dispossess them and appropriate to his own use over one half of the land to which they had a title from the government, without making a purchase of it or offering compensation. The whole course of appellant, from the start, was so at variance with morality and common honesty as to subject him to severe criticism and censure and preclude him from asserting any rights in a court of equity.
In the printed brief of counsel considerable space is devoted to the supposed rights of appellant under the irrigating laws of the state, by appropriation, etc. I do not conceive that it has any place or bearing in this controversy. Admitting all that is said to be correct and a proper exposition of the law, yet, irrigation laws are in regard to water, and they have never been construed as allowing the destruction of the land of two farms to obtain water for the use of the third. When the lands of others are indispensable, the right to them must be acquired by purchase or by condemnation, and adequate compensation made.
Great stress is laid upon the fact that application was made to and a plat and map of a proposed reservoir filed with the department of the interior, and by it approved and accepted. I consider this matter of no controlling influence whatever. It could only operate as a license, grant or quitclaim on land within the expressed intention of congress. It is very doubtful whether the land ceded in trust to the government by the Utes could under the treaty be subjected to the subsequent law for reservoirs, but upon this question we express no opinion.
It does not appear that the fact of its having been part of the reservation and the tenure by which the government held the title was brought to the attention of the land department. *121 Appellees filed a protest against the approval of the reservoir plat, which was overruled. Secretary Smith, in October, 1894, in his decision says, in regard to this protest: “In this connection it must be remembered that the approval by the department of the map of location of a reservoir site filed upon under the provisions of the act of March 8,1891, carries only the right of way over vacant public lands covered by such location, and in nowise affects other tracts. * * * This department cannot inquire into the merits of the protests, but must refer the parties to the courts for their proper remedy, if in any wise injured in their possession, by the building and use of the proposed reservoir.” 19 Dec. Dept, of Int., 304. This authoritative construction of the law under which appellant claimed was conclusive against him.
The act had no retroactive effect, in no way affected those whose rights attached previous to its passage, but parties entering after the passage took subject to the reservoir act. It only applied to lands vacant and unoccupied at the time of its passage.
It follows that the decree and judgment of the district court should be affirmed.

Affirmed.