## NIELSON v. SANDBERG

No. 6555.   Decided September 27, 1943.   (141 P. 2d 696.)

*Ellis J. Pickett*, of St. George, for appellant.

*LeRoy H. Cox*, of St. George, for respondent.

LARSON, Justice.

What new burdens can be imposed upon the servient estate, merely because of the existence of an easement? We are asked to review the answer to this question as given by the District Court of Washington County.

About 1866, the pioneers of Washington County established a Cotton Factory near St. George. To furnish power for this factory, water was diverted from Sand Hollow Wash, or Mill Creek, and taken in a ditch constructed for that purpose over part of the southeast quarter of Section 15, Township 42 South, Range 15 West of Salt Lake Base and Meridian, to a forbay where a penstock led down to the factory building. Part of these waters, not needed at the cotton factory were continued by a ditch from the forbay along the creek bank some distance where it furnished power for a grist mill, and flowed back into the creek bed. It was then diverted from the creek bed by another ditch and used by an irrigation company and individuals on their farms. In 1875, the quarter section above referred to was patented by one Whitehead which patent contained the usual reservations for

"any vested and accrued water rights * * * and rights to ditches and reservoirs used in connection with such water rights as may be recognized and used by local customs, laws and decisions of the court."

This patent covered the lands now embraced within the Washington Townsite Survey and the lands occupied by the cotton factory. The lands owned by plaintiff and here-

inafter referred to as the swimming pool, and the lands of defendant, hereinafter referred to as the pasture are parts of the Washington Townsite Survey. The factory operated until 1901, and thereafter only periodically until 1920, when it closed permanently. The grist mill ceased operations in 1918. The water, however, continued to flow through the ditch across the pasture, as it had done previously, and emptied into the original creek bed from which it was diverted by the farmers. About 1909, defendant became the owner of Block 20 and Lot 27 of Washington Townsite Survey. Lot 27, herein designated as the Pasture is largely in the bottom of the wash, has some trees, grasses and bushes upon it, and is chiefly useable, and has always been used, as pasturage for domestic animals and poultry. Block 20, adjoining it on the west is on higher ground. Part of this is cultivated and here defendant has his home.

Plaintiff acquired Lot 6, Block 12, in the Townsite Survey, south of defendant's property, and in 1926 built a swimming pool thereon. That year through the State Engineer's office, he appropriated 4 C.F.S. of water from Sand Hollow Wash or Mill Creek, to be diverted at a point north of defendant's property, conducted through the old factory ditch to the swimming pool, there used for swimming purposes, and then returned to the natural channel. In short, all plaintiff proposed to do was to make a nonconsumptive use of the waters, which were flowing across defendant's land in the ditch of the factory and mill. In 1940, plaintiff commenced this action in the District Court to enjoin defendant from letting his turkeys roam in and about the ditch over defendant's property, alleging that the turkeys polluted the water so it was unfit for swimming pool purposes. The trial court enjoined defendant from running more than 70 head of turkeys on his lands. Defendant appeals. The following questions are presented:

First: Has plaintiff a right of way or easement for a ditch over the lands of defendant, the pasture?

Second: If he has such right of way or easement does that give him the right to have the water come to his swimming pool, pure and uncontaminated?

Third: Can the owner of an easement change the nature of his use so as to put added burdens upon the servient estate?

We will consider them in order. As to the first question, plaintiff does not contend that he ever obtained by purchase, or eminent domain, or by grant or prescription, any easement over the pasture for the conveyance of water. He bases his right upon two grounds. He contends that since the ditch ran over the pasture before patent, the reservation of existing easements by the patent, created an easement in favor of any one who thereafter wished to avail themselves of existing ditches; also contends that since the factory and mill had a ditch over the pasture, 100-1-7, U. C. A. 1943, gives plaintiff an easement right therein without the consent and against the will of the owner of the servient estate, and without compensation therefor. The patent to the pasture reserved an easement over the lands for:

"* * * any *vested and accrued water rights* for mining, agriculture, manufacturing, or other purposes, and rights to *ditches and reservoirs used in connection with such water rights* as may be recognized by * * * law * * *." (Italics added.)

While this reserves an easement, it is only reserved for water rights which at time of patent had accrued and vested, and for ditches used in connection with such water rights as had then accrued and vested. It is not reserved for anyone who may thereafter decide that he wanted to convey some water over the land. Says Kinney in Vol. II, 2d Ed., of his work on Irrigation and Water Rights, Section 933;

"It is only the right to, or the right of way for, such ditches, canals, or reservoirs as are used in connection with a vested water right that the owner of the latter can successfully claim. Therefore unless the

claimant to the right of way first acquires a vested and accrued water right, he is not entitled to an easement over the public lands for his ditch, canal or other work." *Nippel* v. *Forker*, 26 Colo. 74, 56 P. 577, affirming 9 Colo. App. 106, 47 P. 766; *Clear Creek, etc., Co.* v. *Kilkenny*, 5 Wyo. 38, 36 P. 819; *Hobart* v. *Ford*, 6 Nev. 77; 40 Land Dec. 431; *Noteware* v. *Stearns*, 1 Mont. 311, 4 Mor. Min. Rep. 650; *Broder* v. *Natoma W. & M. Co.*, 101 U. S. 274, 25 L. Ed. 790, affirming 50 Cal. 621; *Tynon* v. *Despain*, 22 Colo. 240, 43 P. 1039; *Childs* v. *Sharai*, 8 Idaho 378, 69 P. 111; Kinney Sec. 931.

After lands have once passed into private ownership rights of way can only be acquired in accordance with the laws of the state. Kinney Sec. 935.

An interesting sidelight is reflected; it was held by the Secretary of Interior that the right of way provisions of the Act of 1866, never applied to rights of way for power purposes. Kern River Co., 38 Land Dec. 302.

Plaintiff contends that he has an easement over the pasture by virture of 100-1-7 U. C. A., which provides:

"Where any person desires to convey water for irrigation or any other beneficial purpose and there is a canal or ditch already constructed that can be used or enlarged to convey the required quantity of water, such person shall have the right to use or enlarge such canal or ditch already constructed, by compensating the owner of the canal or ditch to be used or enlarged for the damage caused by such use or enlargement, and by paying an equitable proportion of the maintenance of the canal or ditch jointly used or enlarged; * * *."

He takes the position that this section gives anyone desiring to convey water from one place to another the right to use any existing ditch so situate that he could avail himself of it, without the consent and against the will of the owner of the land over which the ditch goes, without compensation or without as much as saying, "by your leave." Plaintiff argues, and the trial court apparently took that point of view, that since the factory and mill had an easement to conduct water through a ditch over the pasture, this statute gave anybody else the right to flow water through the ditch without permission of the owner

of the pasture, and without condemnation. The argument seems to be that once an easement exists in favor of one person for the right to flow water through a ditch, the statute grants equivalent rights to any and everybody else without consent of the owner of the fee. In short, although A, the first user, must purchase or condemn an easement to flow water through a ditch over B's land, C, D, and E, are given the right to flow their water through the ditch without either method, and without the permission of A. Such is not the law. This court held in *Salt Lake City* v. *East Jordan Irrigation Co.*, 40 Utah 126, 121 P. 592, that proceedings under this section of the statute were controlled by the principles involved in eminent domain. See also *Tanner* v. *Provo Bench Canal & Irrigation Co.*, 40 Utah 105, 121 P. 584; *Nash* v. *Clark*, 27 Utah 158, 75 P. 371, 1 L. R. A., N. S., 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300. Section 100-1-6, U. C. A., provides for the right of eminent domain for ditches, etc., "upon payment of just compensation therefor." In *Alcorn* v. *Reading,* 66 Utah 509, 243 P. 922, we held that in view of this section, there were no implied rights of way, or ways of necessity for the passage of water. The cases cited supra are the only ones that have been before this court involving 100-1-7. But in each of those cases, brought against the easement owner, to condemn an easement in his easement, it was recognized that such action and judgment in no wise bound or affected the owner of the land over which the ditch existed. In the Tanner case, supra, the condemnor pleaded that the Irrigation Company did not own any part of the lands traversed by the canal, and that he had obtained the consent of the owners of land over which the canal was constructed. In the opinion we said:

"It must be remembered that it is conceded that the *appellants did not own the fee of the lands* traversed by the canals in question, but all they owned was an easement or right of way and right to maintain the canals upon the lands in question. All that respondent sought to, and all that he could, condemn, *as against appellants,* was a similar right or easement." [40 Utah 105, 121 P. 589.] (italics added.)

In the Salt Lake City case, supra, we pointed out that the canal was constructed over land, title to only a small portion of which was in the irrigation company. On page 143 of the Utah Report, on page 598 of 121 P., the court said:

"Again, it is made to appear that respondent owns the land traversed by the canal for a distance of more than a mile. * * * appellant must thus appropriate some land belonging to respondent, which, although shown to be rocky and sandy, yet must be assumed to possess some value, however small. Whatever this value is shown to be must be allowed as compensation for land taken. For that portion of the canal where respondent does not own the land but simply has a right of way, it, of course, cannot claim compensation for what it does not own, and for that part of the canal respondent could only recover damages or compensation in accordance with the rules hereafter stated."

Those rules are in effect for compensation for interference with, or loss of use of its canal, or its easement.

Can one, who has no easement for a ditch over the land of another, use the ditch of a third party traversing the land, without consent of the owner of the servient estate, where it is unnecessary to make any alterations in the ditch? An easement, being a burden upon the land which it traverses is limited to uses for which, or by which it was acquired, and to the person who acquired it, or for the benefit of the property for which it was acquired. Said the Washington Court in *Lund* v. *Johnson*, 162 Wash. 525, 298 P. 702, 704:

"The rule that the user must be exclusive means no more, in the case of an easement for a right of way than that *the right of the claimant must rest upon its own foundations, and not depend upon a like right* in any other person. * * * the person asserting a right of way * * * exercised his right under a claim of right independently of others." (Italics added.) *Hendrickson* v. *Sund*, 105 Wash. 406, 177 P. 808.

"The party claiming the right must show that he has acquired it by his own use independent of others; he cannot make his right depend in any degree upon the enjoyment of a similar right by others." Jones on Easements Par. 273; *Cox* v. *Forrest*, 60 Md. 74; *Dodge* v. *Stacy*, 39 Vt. 558.

Kinney in his monumental work on Water Rights in Vol. II, Sections 974ff, says it is the general law that no one can acquire a right of way to conduct water over the land of another except by consent of the owner of the fee, by eminent domain, or by prescription. *Blankenship* v. *Whaley*, 124 Cal. 300, 57 P. 79; Id., 142 Cal. 566, 76 P. 235; *Prentice* v. *McKay*, 38 Mont. 114, 98 P. 1081;

"and he cannot arbitrarily seize and use another's ditch, or interest in a ditch, for that purpose." *MacRae* v. *Small*, 48 Or. 139, 85 P. 503, 505; *Rasmussen* v. *Blust*, 85 Neb. 198, 122 N. W. 862, 133 Am. St. Rep. 650.

But it is said that when plaintiff made his application to appropriate the water for swimming pool purposes, he designated a point of diversion above the pasture, and that he intended to conduct it to the pool through this ditch; that when such application was approved and certificate issued that gave him the right through the ditch. But the certificate of the engineer did not and could not give plaintiff any rights to use the ditch in question or conduct this water over the pasture. *Vanderwork* v. *Hewes*, 15 N. M. 439, 110 P. 567; *Swank* v. *Sweetwater, etc., Co.*, 15 Idaho 353, 98 P. 297; *Baldridge* v. *Leon Lake Ditch & Reservoir Co.*, 20 Colo. App. 518, 80 P. 477; *Marshall* v. *Niagara Orchard Co.*, 22 Idaho 144, 125 P. 208.

It must follow that plaintiff has shown no right of way in the ditch, nor any right of way over the pasture for the conduct of water or otherwise.

Plaintiff also contends that if he has no right of way over the pasture, he is merely making a non-consumptive use of the water of other users who do have a right of way for the water; that he adds no additional water to the flow in the ditch and merely diverts the water of others from their ditch after it has crossed the pasture; and therefore the water he uses is lawfully flowed through the ditch over the pasture. This brings us to the second question: Assuming that the water plaintiff

uses is water that is lawfully flowed through the ditch over the pasture, has plaintiff the right to insist that the water comes to his swimming pool, pure and uncontaminated; that is in the condition it was when first diverted from the natural channel? Since plaintiff has no easement over the pasture in his own right, he certainly can assert as against the servient estate no greater right than could the owner of the easement. What rights then can the owner of the dominent estate assert against the owner of the servient estate? Can the water user who merely has an easement over land for conducting water through a ditch impose limitations upon the use which the land owner may make of his land? A right of way founded upon a deed or grant is limited to the uses, and the extent thereof as fixed by the grant or deed. If this easement is based upon the reservation in the patent, it is limited by the use and way of its exercise at the time of patent. That right was merely the right to have water flow for power purposes, as that was all the use made at the time of patent. Of course, that right might be enlarged since patent, by prescription, but in that event, the claimant must stand on the prescription and the grant will be presumed to have been released and extinguished. *Stearns' Ex'r* v. *Richmond Paper Mfg. Co.*, 86 Va. 1034, 11 S. E. 1057. Such prescriptive right would be limited by the nature and extent of use during the prescriptive period. *Richardson* v. *Pond*, 15 Gray, Mass., 387, Jones on Easements, Sec. 292.

"A right of way for one purpose gained by user cannot be turned into a right of way for another purpose if the latter adds materially to the burden of the servient estate; and the right derived from user can never outrun or exceed the user in which it had its origin." *American Bank-Note Co.* v. *New York El. R. Co.*, 129 N. Y. 252, 29 N. E. 302, 305; *Ryan* v. *Mississippi Valley S. I. R. Co.*, 62 Miss. 162; *Richardson* v. *Pond*, supra; Jones on Easements, Sec. 291.

The use during the prescriptive period is the only indication of the nature and extent of the right acquired. *Turner* v. *Hart*, 71 Mich. 128, 38 N. W. 890, 15 Am. St.

Rep. 243. The servient estate can only be subjected to the easement to the extent to which the easement was acquired, and the easement owner cannot change this use so as to put any greater burden upon the servient estate.

"Thus a diversion of water for power purposes is not, ordinarily at least, justifiable under an easement created by a diversion of water for purposes of irrigation." Restatement of Property—Easements, Sec. 29; *Joseph* v. *Ager*, 108 Cal. 517, 41 P. 422; *Hargrave* v. *Cook*, 108 Cal. 72, 41 P. 18, 30 L. R. A. 390.

The right cannot be enlarged to place a greater burden or servitude on the property. *Greeley Irr. Co.* v. *Von Trotha*, 48 Colo. 12, 108 P. 985; the right to maintain a ditch or to flow water through it, does not include the right to in any manner injure the servient estate, *Thompson* v. *Uglow*, 4 Or. 369 (Reprint page 411).

"Neither can the ditch owner so use his easement as to materially interfere with the ordinary use of the land by the landowner." Kinney, Vol. II, Sec. 992, "And in this connection it may be stated that as a general proposition, every man has a right to the ordinary and natural use and enjoyment of his own property, and if while lawfully in such use and enjoyment, without negligence or malice, a loss occurs to his neighbor, it is damnum absque injuria, for the rightful use of ones own land may cause damage to the other without legal wrong." Kinney Sec. 993 and cases cited.

This rule has been applied to cases where the cattle of the landowner injured the ditch, *Durfee* v. *Garvey*, 78 Cal. 546, 21 P. 302; *Keller* v. *Fink*, 4 Cal. Unrep. Cas. 730, 37 P. 411. See, also, *People* v. *Truckee Lumber Co.*, 116 Cal. 397, 48 P. 374, 39 L. R. A. 581, 58 Am. St. Rep. 183. The rule that the duty of making repairs is upon the owner of the ditch is even enforced where injuries result to the users of the waters of the ditch from the cattle of the land owners, and that too where the water was used by a municipality. *City of Bellevue* v. *Daly*, 14 Idaho 545, 94 P. 1036, 15 L. R. A., N. S., 992, 125 Am. St. Rep. 179, 14 Ann. Cas. 1136.

*Harmony Ditch Co.* v. *Sweeney*, 31 Wyo. 1, 222 P. 577, 579, was suit by a ditch owner for damages occasioned by de-

fendant's cattle grazing on the public domain, and coming onto the plaintiff's ditch there. The court approved the rule laid down by the case *City of Bellevue* v. *Daly*, supra, that the court will not enjoin the use of a person's land merely because stock get into a ditch flowing across that land, thereby poluting the water; and that the burden of protecting the easement is on the owner thereof. The court then went on to say that defendant had a right to graze sheep near the ditch.

"But the right to graze adjacent lands must be exercised in a reasonable manner, and we think it cannot include the right deliberately to use a private ditch as a watering place for more than 1,000 head of sheep that are continuously or repeatedly driven or herded thereon, as defendant admits having done in this case."

The court then held this to be a trespass on plaintiff's rights. Here both parties were on the public domain. Considering a slightly different situation in *Strong* v. *Brown*, 26 Idaho 1, 140 P. 773, 774, 52 L. R. A., N. S., 140, Ann. Cas. 1916E, 482, the court quoted from *City of Bellevue* v. *Daly*, supra, to the effect that every man has a right to the natural use of his property, and if damage results therefrom to his neighbor, it is damnum absque injuria. The court had under consideration suit by a cattle owner against a miner, for injuries to his cattle which fell into an unfenced prospecting hole on defendant's property. The court said:

"In order for one to be liable for damages, he must be guilty of some act of negligence. Such negligence may consist of omission or commission. It seems to us that when a mining claim is left unfenced, as between the owner thereof and the owner of grazing live stock, there exists concurrent risks."

Those risks being that the stock will damage the mining property, and that the stock will stray in, and themselves suffer injury. The court affirmed a judgment in favor of defendant therein.

In *West Coast Power Co.* v. *Buttram*, 54 Idaho 318, 31 P. 2d 687, 689, suit to enjoin the landowner from plowing his land to the damage of a pipe line laid beneath the surface of the land. Plowing was done in the normal and ordinary manner, and the question of maliciously damaging the pipe is not in the case. The deed of the right of way does not restrict the use of the servient estate in the manner of use at all. The court decided that the easement must be restricted to the terms of the deed, and nothing would be implied beyond the terms of such deed. Going on to quote from *Pioneer Irr. Dist.* v. *Smith*, 48 Idaho 734, 285 P. 474, the court said:

"The owner of such an easement over lands of another is required 'to keep up, maintain, and protect' his easement or right way, and it is his duty to protect his ditch. [Citing *City of Bellevue* v. *Daly*, supra.] The owner must likewise so use his easement as not to materially interfere with the ordinary use of his land by the owner of the servient estate. * * * And, in the absence of limitations imposed by contract, or otherwise, the owner of the servient estate has the undoubted right to use his land according to the ordinary course of husbandry, including the right to graze his livestock thereon. [Citing cases.] He may without negligence use it as 'similar land in the vicinity is ordinarily used and for which it is naturally fitted,' and repairs to the ditch made necessary by such ordinary use must be made by the ditch owner. The landowner is not liable for damages caused by ordinary use of the land by him. [Citing authorities.] The ditch owner cannot complain if the landowner's hogs wallow in his ditch. *Joslin* v. *Sones*, 80 Iowa 534, 45 N. W. 917."

Speaking of an easement for travel, the same court in *Kirk* v. *Schultz*, Idaho, 119 P. 2d 266, 270, said:

"One acquiring an easement and right to travel over the lands of another not only assumes the burden of maintenance of said right of way, but all other burdens incident to the use." citing *City of Bellevue* v. *Daly*, supra.

The same statement is made again in petition for rehearing. *Pioneer Irr. Dist.* v. *Smith,* supra, is a case involving much the same situation as the case at bar, though there

suit was by the ditch owner against the owner of the land for *damages to the ditch* occasioned by defendant's hogs congregating therein, obstructing the flow of the water, and damaging the banks of the ditch; the ditch being there built upon the surface of the ground, with raised banks, rather than excavated into the ground. The court decided, as indicated above, that demurrer to the complaint was properly sustained, no cause of action stated.

"Plaintiff's occupancy of the land embraced within its right of way was not exclusive, because, as owner of the fee, the defendant had dominion over it and physical possession and occupancy thereof, subject only to plaintiff's right of way.

"Under all the facts disclosed by the complaint, we think defendant acted in a reasonable manner in permitting his hogs to run within his enclosure, and, as owner of the servient estate, was within his * * * right to engage in farming, and not inconsistent with plaintiff's ownership of the ditch and right of way. Any casual damage resulting to the ditch from defendant's use of his right of pasturage must necessarily be repaired by plaintiff." [48 Idaho 734, 285 P. 476.]

It was said in *City of Payette* v. *Jacobsen,* 57 Idaho 524, 66 P. 2d 1013, 1015:

"As a general principle of law it is the duty of the owner of an easement, or right-of-way over the lands of another, to maintain it in a state of good repair and efficiency so that no unnecessary damage will result from its use to the servient estate."

This was a suit to enjoin defendant from flooding streets belonging to plaintiff municipal corporation. By answer, defendant alleged that a waste pipe installed by plaintiff for her use was inadequate, and caused the flooding. The court went on to say that the burden would be on defendant to show that plaintiff had the duty to keep the culvert in repair, by contract, or otherwise, and the case was sent back for further findings on this affirmative defense.

In *Lamb* v. *Lamb,* 177 N. C. 150, 98 S. E. 307, the doctrine stated in *City of Bellevue* v. *Daly,* supra, that the owner of the easement has the duty of keeping it in repair was

approved without comment, and likewise in *Richardson* v. *Jennings,* 184 N. C. 559, 114 S. E. 821, 823, with the additional statement that unless,

"By virtue of express agreement, the owner of the servient tenement * * * is not bound to maintain such easement or keep same in repair."

*Carsen* v. *Jackson Land & Min. Co.,* 90 W. Va. 781, 111 S. E. 846, 847, is suit for damages resulting from a fall through a bridge built by defendants and included in plat of streets and alleys of a subdivision. Plaintiff is a landowner therein. The court said:

"It is likewise very well established that the owner of an estate over which there exists an easement is under no obligation to maintain the easement in a condition fit for use. The duty to maintain it so that it may be enjoyed rests upon those entitled to its enjoyment, in the absence of some contractual or prescriptive relation imposing this duty upon the owner of the servient estate." citing cases.

The court went on to say that general demurrer to the complaint was properly sustained. And in *Hastings* v. *Chicago R. I. & P. R. Co.,* 148 Iowa 390, 126 N. W. 786, 789, the statement was made:

"But the grantor of an easement consisting of a right of way in the absence of any express stipulation is under no obligation to maintain the right of way in suitable condition for use. He is bound not to obstruct it, but further than that its maintenance is left to the grantee." citing cases.

In *Coulsen* v. *Aberdeen-Springfield Canal Co.,* 47 Idaho 619, 277 P. 542, 545, suit was brought by a landowner against a canal company for damages on account of death of livestock. One of plaintiff's cows was grazing close to the waste ditch of the canal company when an eroded bank of the ditch caved in causing the animal to fall in. In affirming judgment for plaintiff, the court said:

"The waste ditch as originally constructed was not dangerous to live stock grazing in its vicinity. At any rate, the injury did not re-

sult from the use of the right of way under the original construction, but from a condition which resulted from the collapse of the original control works. Appellant was under the duty of maintaining its waste ditch in substantially its original condition. Its obligation to impose upon the servient estate no unnecessary burden, and to prevent no use of the property not inconsistent with its right to maintain the ditch, bound it to take such measures as might be necessary to make its right of way no more burdensome than it was originally. The duty of maintaining the easement or right of way was upon appellant and not upon respondent." citing cases.

Since the easement for the ditch was established under conditions which imposed no obligations upon the owners of the pasture, to keep animals away from the ditch, or to protect the purity of the waters flowing through the ditch; and since the use defendant makes of the pasture is a reasonable one, and the only type of use for which it is suitable, it follows that the judgment of the trial court should be reversed and the cause remanded to the trial court for such further proceedings as may be taken consistent with the views herein expressed. Such is the order.

Costs to appellants.

McDONOUGH, MOFFAT, and WADE, JJ., concur.

WOLFE, Chief Justice.

I concur. As stated in the opinion, if the plaintiff could convey water through the ditch without obtaining the consent of the owner of the servient tenement or without condemnation on the theory that he was only using nonconsumptively the water which others had a right to transfer through the ditch, his rights in relation to the owner of the servient tenement were subject to the same restrictions and limitations as the rights of the water users of whose transfer right he was taking advantage.

The right of those water users to convey water to their dominant estates was subject to a reasonable use of the

servient estate for the purposes for which it was naturally suited, unles by prescriptive right such uses were limited to the point where the owner of the dominant estate could not pollute the water by such natural use. So far as the original users of the ditch were concerned no such prescriptive right to limit defendant's uses was shown. Plaintiff's rights, therefore, cannot arise any higher than the rights of owners of the ditch, which were to take the water as it came to them, subject to such impurities as the reasonable use of the defendant's land might add to the water. The nonconsumptive use of plaintiff was, therefore, also subject to this same burden. I am not certain that I see the relevancy of cases which treat of the duty of the owners of the easement to keep in repair the right of way (ditch in this case.) Those cases which hold that the duty to repair the canal is on the users even though the damage is done by the owner of the servient estate *in the reasonable use* of his own land, may have value for reasoning purposes.