376 P.2d 940

**METROPOLITAN INVESTMENT COMPANY, a Partnership composed of W. Adrian Wright, W. Meeks Wirthlin, and A. P. Neilson, Plaintiff and Respondent,**

**v.**

**Jerry SINE and Dora T. Sine, his wife, Defendants and Appellants.**

**No. 9622.**

Supreme Court of Utah.

Dec. 19, 1962.

Richards, Bird & Hart, Salt Lake City, for appellants.

Brant H. Wall, Jackson B. Howard, Salt Lake City, for respondent.

COWLEY, District Judge.

Plaintiff brought this action to quiet title to a parcel of property hereinafter described. The cloud alleged is a restrictive covenant contained in an assignment of contract and quitclaim deed. The case was tried to the court and from a judgment in favor of the plaintiff eliminating the restrictive covenant, defendants appeal.

This case involves a parcel of property located at 324 West North Temple Street, in Salt Lake City, Utah. The parcel is 40 feet wide and 97 feet deep. The 40 feet constitute frontage on the north side of North Temple Street between 2nd and 3rd West streets. Defendants purchased this property on September 24, 1955, by contract from one Fendrelakis and resold it to A. P. Neilson on October 29, 1956. This latter transaction consisted of a quitclaim deed and the assignment of the Fendrelakis contract executed by Jerry Sine and Dora Sine, his wife, the defendants, in favor of A. P. Neilson. This property contained an old apartment house which had been remodeled from an older home, consisting of eight units which since has been razed. The *quitclaim* deed signed by the defendants was duly recorded in the office of the County Recorder of Salt Lake County, Utah.

At the time defendant Jerry Sine sold the subject property to A. P. Neilson he was dealing with Mr. Neilson's real estate agent and upon learning that A. P. Neilson was the same Mr. Neilson who was interested in a large motel property in Salt Lake City, he, Jerry Sine, required as a condition of sale to A. P. Neilson that the following restrictive covenant be written in the assignment of contract and quitclaim deed, "This property shall not be used for the erection of a motel thereon." This restrictive covenant was agreed to by A. P. Neilson at the time of the transaction, and is the subject *of this lawsuit which plaintiff* seeks to vitiate.

The record reveals that A. P. Neilson purchased the property in question not only for himself but on behalf of his two partners as well. On November 5, 1956, a few days after A. P. Neilson acquired the property from the defendants, he conveyed an undivided one-third interest to each of the

other two partners, W. Adrian Wright and W. Meeks Wirthlin. A short time thereafter, on November 21, 1956, the three named partners, their wives joining, conveyed their respective undivided one-third interest to the Metropolitan Investment Company, a partnership composed of the three above named persons, the plaintiff herein.

The defendants, Jerry Sine and Dora T. Sine, his wife, are partners who have engaged in the motel business for approximately 14 years. They operate two motels, one known as the Se Rancho Motor Lodge at 640 West North Temple Street, Salt Lake City, Utah, about three blocks west of the property in question, and Scotty's Romney Motel located on North Temple Street, between 6th and 7th West, approximately four blocks west of the subject property. Both motels are located on the north side of North Temple Street as is the property in question. Said motel properties are separated from the subject property by the Salt Lake Viaduct and railroad tracks. It was these two motel properties that defendants were attempting to protect when they imposed the restrictive covenant in the assignment of contract and quitclaim deed conveyed to A. P. Neilson.

At the time of the purchase of the property by A. P. Neilson neither he nor the partnership, Metropolitan Investment Company, which acquired title three weeks later, contemplated the construction of a motel thereon, but purchased the property for other purposes. However, circumstances have now changed which renders the use of the subject property desirable as part of a large motel development as will appear hereafter.

Plaintiff also purchased parcels of property surrounding the property in question, except two parcels, and on September 30, 1960, sold the surrounding and subject property to the Western Travel, Inc., a corporation engaged in the motel business, for a large sum of cash and about 12% of the stock in Western Travel, Inc. The Western Travel purchased the two parcels mentioned from third parties directly. The motel company now owns in addition to the subject property all the adjacent property surrounding it on three sides. The Western Travel, Inc., plans to construct a motel development of approximately 130 units, together with a restaurant and swimming pool, on the entire tract, including the property in question, if allowed as a result of this appeal.

If the subject property can be utilized as part of this motel development, the architectural design for the frontage on North Temple Street will be more imposing and attractive, and the number of units can be increased by approximately six. The subject property, therefore, is of such a nature as to prevent the optimum use of the adjoining properties owned by Western

Travel since it constitutes a peninsula 40 feet by 97 feet into the surrounding properties. If the Western Travel is not permitted to use the property in question in its proposed motel development, the corporation intends, nevertheless, to construct a motel on the adjacent and surrounding properties, exclusive of the property in question.

There is no question of notice of the restrictive covenant in this case as all parties, including the motel corporation, had actual and constructive notice of the restriction.

The plaintiff, in selling the properties to Western Travel, agreed to test the restrictive covenant in question on behalf of the motel corporation and therefore brought this action as plaintiff. Other facts will appear in the opinion.

The trial court's judgment for the plaintiff was based upon three findings which defendants attack on this appeal in seeking a reversal. They, are, (1) that since October, 1956, there has been a great and substantial change in the neighborhood and area of the property in question, (2) that the restrictive covenant is not a benefit to the defendants but only serves as a detriment to the plaintiff, and (3) that the said Restriction was intended to prevent A. P. Neilson personally from constructing a motel upon said premises. We shall discuss

the above three issues in the order set forth.

The facts which the trial court found in support of the nullification of the restrictive covenant are facts which require clear and convincing evidence to support such findings.[1] This is an equity case in which we review the trial court's findings of fact but overturn them only where it is manifest that the trial court has misapplied proven facts or made findings clearly against the weight of the evidence.[2]

The trial court's finding that there has been a great and substantial change in the neighborhood and area involved was based solely on the increased business construction and activity since October, 1956, when the restrictive covenant was imposed by the defendants. In 1956 there were at least four motels in operation on North Temple Street between West Temple and Third West Streets consisting of a total of 92 units. The increased business in this area since 1956 includes several new motels with a substantial increase in the number of units, Harmon Cafe, two Service Stations, at least one parking lot, and some older buildings which have been torn down or razed. This increased business activity in the area, without enumerating in more detail, is the change in the character of the neighborhood that plaintiff relied upon at

---

1. See Child v. Child, 8 Utah 2d 261, 332 P. 2d 981.

2. See Constitution of Utah, Article VIII, Sec. 9; O'Gara v. Findlay, 6 Utah 2d 102, 306 P.2d 1073.

the trial in nullifying the restrictive covenant.

In 1956 when the contracting parties agreed to the covenant in question the area involved was zoned commercial by the Salt Lake City zoning ordinance allowing for the construction and operation of motels and other types of business, which situation continues today, so there has been no change in zoning, or the commercial character of the area, except of course the business growth.

The character of the area for motels was set by 1956, and the subsequent development of motels and other business followed the set pattern. The desirability of the area for the construction of motels was well known to the contracting parties at the time, and the alleged change in the neighborhood and area by the increased number of motels and other business was exactly as contemplated by the parties when the restriction was imposed and accepted.

■ It has been held that before a change of character in the neighborhood will vitiate a covenant in a deed it must be so great as clearly to neutralize the benefits of the restriction to a point of defeating the object and purpose of the restrictive covenant,[3] or in other words the change required to afford relief is where the change is such as to render the covenant valueless. If the change in neighborhood makes the restriction valueless so its object and purpose cannot be carried out, then it should not be enforced, but in the instant case the restrictive clause was imposed because of the change already in process and as contemplated by the parties in 1956. Therefore the change in the commercial growth of the area made the object and purpose of the restrictive covenant more valuable to the defendants which destroys the force of plaintiff's argument and authorities.[4] The trial court misapplied the proven facts[5] on this issue and committed error.

■ The second point in contention on this appeal is the finding of the trial court that the restriction was not a benefit to the defendants but only served as a detriment to the plaintiff and therefore should not be enforced. The parties are in agreement that the restriction should be ignored if it confers no benefit on the defendants thereby rendering the restrictive covenant

3. Humphreys et al. v. Ibach (1932), 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980, 985.
4. Change from residential to essentially business. Plaintiff denied injunctive relief who brought action to enforce restrictive covenant. Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 76 A.L.R. 1348, p. 1354.

Change from residential to commercial. Plaintiff denied injunctive relief who brought action to enforce restrictive covenant. Price v. Anderson, 358 Pa. 209, 56 A.2d 215, 2 A.L.R.2d 593.

5. O'Gara v. Findlay, 6 Utah 2d 102, 306 P.2d 1073.

useless but disagree as to its purpose and effect. We agree that there is no reason for continuing the restriction unless there is a benefit to be realized by the defendants. Restrictive covenants will not be enforced where enforcement is no longer of general usefulness, nor capable of serving purpose for which restriction was imposed,[6] or reason of restriction has ceased.[7]

Plaintiff's contention that defendants would not derive a substantial benefit from preservation of the restriction is based primarily on defendant Jerry Sine's testimony that six motel units would not materially damage his motel business. On the other hand, Jerry Sine further testified in substance that an impressive motel front could not be built on North Temple Street without this property, and this fact would have a substantial effect upon his motel business. The defendants at least considered this fact important to them. Mr. and Mrs. Sine advertise by numerous road signs for the purpose of attracting guests originating from regions outside of Salt Lake Valley. If a large motel was erected, in part, on the subject property, defendants feared that the business of Se Rancho and Scotty's Romney would be adversely affected. Guests, especially those traveling from the north and south and turning onto North Temple Street, would be diverted into such motel, to the detriment of Se Rancho and Scotty's Romney situated to the west thereof.

To prevent an imposing motel on North Temple Street as far as possible in order to protect their motel business was the main reason defendants purchased the property from Fendrelakis in the first place, and they carried out this purpose in requiring the restriction as a condition of sale to Mr. Neilson, who was known to them to be interested in a large motel in Salt Lake City. Even so, the restriction was required and the sale completed only after Mr. Sine was informed that Mr. Neilson wanted the property for "other purposes."

When the restrictive covenant was entered into the purchaser, A. P. Neilson, as well as Jerry Sine, the seller, were well acquainted with the locality, the property in question, its relationship to the surrounding property, and had equal knowledge as to the purpose and effect of the restriction. It follows therefore that the parties to the covenant knew at the time it was agreed to that the restriction on the Sine property would interfere with an imposing front on North Temple or the architectural design of any motel that might be constructed. The purpose of the restriction when im-

6. Osius et al. v. Barton et al. (1933), 109 Fla. 556, 147 So. 862, 88 A.L.R. 394.

7. See also Clark on Covenants and Interests Running with Land, pp. 163–165. Dean Pound discussion on Covenants, 33 Harvard Law Review, beginning at p. 171.

posed still exists as does the benefit to the defendants, and therefore the purpose of the covenant has not ceased or become useless. This conclusion is inescapable since there have been no changes to render the restriction useless since the covenant was originally entered into. The finding of the lower court on this issue was clearly against the weight of the evidence [8] and constituted error. This appeal does not involve a restrictive covenant in restraint of trade or against public policy.

The final issue to be considered is the lower court's finding that the restrictive covenant was personal to A. P. Neilson. The restrictive covenant was written into the assignment of contract and quitclaim deed by defendant Jerry Sine without consulting an attorney. The restriction reads as follows: "This property shall not be used for the erection of a motel thereon." It will be noted that the restriction does not contain the words, "heirs, successors, or assigns," or any other limitation as to the time it shall run. The covenant, therefore, is ambiguous and subject to interpretation considering the intentions of the parties at the time of its imposition. The intentions of the parties, as gathered from the surrounding circumstances, and pur-

pose of the restriction, must be considered and given effect.[9]

The words "assigns etc." omitted from a restrictive covenant does not necessarily preclude a finding that the restriction runs with the land in a given case where the intentions of the parties and surrounding circumstances warrant such a finding; [10] however, in the instant case the principle of law is applicable that where the duration of the restrictive covenant is not specified the covenant will be limited to such time as seems reasonable, considering the nature of the circumstances of the case and the purpose of its imposition.[11]

The parties to this lawsuit urge in their briefs the reasonable time theory for the duration of the restrictive covenant, differing only as to what constitutes a reasonable time. Plaintiff contends that a reasonable time has now lapsed or in any event the lower court's finding that the covenant was personal to A. P. Neilson should be affirmed, while defendants argue that the restrictive covenant should continue as long as the Sines are in the motel business on North Temple Street.

We now turn to a consideration of what constitutes a reasonable time based

8. O'Gara v. Findlay, 6 Utah 2d 102, 306 P.2d 1073.
9. See 26 C.J.S. Deeds § 162(3), p. 1094.
10. See Restatement of the Law of Property by American Law Institute, Vol. 5, Sec. 531(c), p. 3197.

11. 14 Am.Jur., Sec. 5, pp. 484, 485. Also Sec. 205, p. 615. Gardner v. Maffitt et al. (1934), 335 Mo. 959, 74 S.W.2d 604; see annotations 95 A.L.R. 458.

upon the intentions of the parties, the purpose of the restriction, and the surrounding circumstances of the case. It was clearly the intentions of the original parties that a motel, at least in part, was not to be built on the subject property, and this restriction prohibiting the use of the property in question for motel purposes was for the sole benefit of the defendants, and their two motel operations located on West North Temple Street. Such purpose of the restriction was well understood by the grantee, A. P. Neilson, at the time he agreed to the restrictive clause. These facts lend weight to the permanency of the situation intended to be protected. Otherwise, the ownership and control of the property in question by Mr. Neilson and the other partners of plaintiff company might only be temporary,[12] which would defeat the purpose of the restriction and the intentions of the original contracting parties. A covenant to A. P Neilson personally which could have been circumvented by mere transfer of title would have been worthless to the property intended to be protected. Such was not the intentions of the original parties to the contract. From all the facts and circumstances in this case as revealed by the record we find that it was the intention of the parties to the contract not to limit the restriction to A. P. Neilson personally. The finding of the trial court to the contrary was clearly against the weight of the evidence,[13] and erroneous. Plaintiff's further contention that the duration of the restriction has now lapsed by the passing of a reasonable time must also be rejected since the time involved is a mere four years and what has been said as to the covenant not being personal to Mr. Neilson disposes of this point.

The permanency of the restriction as discussed above lends weight to the proposition that it was the intent of the original parties to the covenant to bind the successors of the subject property,[14] and in Oliver v. Hewitt,[15] it was held that a restrictive covenant not to use land for a certain purpose, regardless of whether the restriction runs with the land, is, nevertheless, binding upon a grantee or his successors taking title with full knowledge of the restrictive covenant. As pointed out in the facts, all parties to this case, including the motel corporation, had actual and constructive notice of the restriction and are subject thereto. We have no question of a bona fide purchaser without notice, which might free the land of the restriction.

From what has been said we hold that a reasonable time under the facts of this

12. See Restatement of the Law of Property by American Law Institute, Vol. 5, Sec. 531(d), p. 3198.

13. O'Gara v. Findlay, 6 Utah 2d 102, 306 P.2d 1073.

14. See Restatement of the Law of Property by American Law Institute, Vol. 5, pp. 3197, 3198.

15. Oliver v. Hewitt, (1950) 191 Va. 163, 60 S.E.2d 1, 23 A.L.R.2d 516.

case for the restrictive covenant to continue in full force and effect is so long as defendants, Jerry Sine or his wife, Dora Sine, operate either Se Rancho Motor Lodge or Scotty's Romney Motel on North Temple Street.[16]

The judgment is reversed and restrictive covenant upheld. The case is remanded to the trial court to write findings in accordance with this opinion. Costs to appellants.

WADE, C. J., and HENRIOD, McDONOUGH, and CROCKETT, JJ., concur.

CALLISTER, J., having disqualified himself, did not participate herein.