**Francis McBRIDE and Nellie McBride, husband and wife, Plaintiffs and Respondents,**

v.

**Keith W. McBRIDE and Elda R. McBride, husband and wife, Defendants and Appellants.**

No. 15378.

Supreme Court of Utah.

June 8, 1978.

F. L. Gunnell of Hillyard, Gunnell & Low, Logan, for defendants and appellants.

A. W. Lauritzen, Logan, for plaintiffs and respondents.

HALL, Justice:

Plaintiffs brought suit to quiet title to a right of way over defendant's tract of land

and from a decree quieting title in plaintiffs, the defendants appeal.

The tract of land comprising the servient estate is utilized for agricultural purposes and it is not disputed that plaintiffs have a valid prescriptive right of way of many years standing over the said tract of land. It is also undisputed that gates have existed at both ends of the right of way since 1920 and that from time to time locks have been placed thereon, but they were removed when complaints were made. However, in June of 1976 defendants caused locks to be placed thereon supposedly to protect against theft and vandalism by trespassers. Plaintiffs were furnished a key for their access but they took exception to the locked gates, claiming that they constituted an unreasonable interference with their long-established property interest. They ultimately filed this lawsuit in September, 1976.

The evidence adduced at trial focused upon the frequency of use, the relative convenience and the degree of protection afforded by the locked gates. Based thereon, the trial judge determined that the locking of the gates placed a burden on the right of way of the dominant estate that was theretofore nonexistent; furthermore, that such constituted an unreasonable interference by the owner of the servient estate that the law would not tolerate. He consequently quieted title in plaintiffs and required the removal of the locks from the gates.

 It has long been the law of this jurisdiction,[1] and elsewhere[2] that the extent of an easement acquired by prescription is measured and limited by the use made during the prescriptive period. It is

also generally accepted that the owner of the servient estate may use his property in any manner and for any purpose consistent with the rights of the owner of the dominant estate. On the other hand, while the owner of the dominant estate may enjoy to the fullest extent the rights conferred by his easement, he may not alter its character so as to further burden or increase the restriction upon the servient estate.[3]

The trial judge correctly applied the foregoing principles to the facts as he found them to exist. Hence, the only question presented by this appeal is whether the evidence contained in the record is sufficient to support the decision of the court below.

Defendants contend that the evidence adduced does not support the findings of fact made by the trial judge, and in any event, since this is a case in equity, that we should make our own determination of the facts.[4]

 While it is the responsibility of this Court to review the evidence in equity cases,[5] it will not disturb the findings of fact made below unless they appear to be clearly erroneous[6] and against the weight of the evidence.[7] In conducting our review of the evidence we are of course mindful of the advantaged position of the trial judge who sees and hears the witnesses and we are constrained to give due deference to his decisions by reason thereof.[8]

 Specifically in regard to the facts the trial judge was called upon to determine, it is to be noted initially that the pivotal facts were not in dispute. The scope of plaintiffs' easement was not in

1. *Big Cottonwood Tanner Ditch Co. v. Moyle, et al.,* 109 Utah 213, 174 P.2d 148 (1946), citing cases, including *Nielson v. Sandberg,* 105 Utah 93, 141 P.2d 696 (1943).

2. 28 C.J.S. Easements § 95.

3. *North Union Canal Company v. Newell,* Utah, 550 P.2d 178 (1976) and the cases cited therein; see also, 28 C.J.S. Easements § 95.

4. Constitution of Utah, Article VIII, Section 9, allows appeals in equity cases on questions of both law and fact.

5. *Nokes v. Continental Min. & Mill. Co.,* 6 Utah 2d 177, 308 P.2d 954 (1957).

6. *Nunley v. Walker,* 13 Utah 2d 105, 369 P.2d 117 (1962).

7. *Metropolitan Investment Co. v. Sine,* 14 Utah 2d 36, 376 P.2d 940 (1962).

8. *Barker v. Dunham,* 9 Utah 2d 244, 342 P.2d 867 (1959).

issue and defendants freely admit that plaintiffs had free and uninhibited access through the gates prior to the placement of locks thereon. That fact standing alone gives rise to the clear, inescapable conclusion that the locks were an obstruction or disturbance of the easement. The locking of the gates was clearly an interference with the privilege to which the owners of the easement were entitled since it made their use less convenient and beneficial than before.[9] Such an alteration in the easement requires the consent of the other party[10] unless it can be considered to be of such an immaterial character as would not interfere with the reasonable enjoyment of the easement.[11]

In regard to the matter of consent to the alteration, the trial judge aptly observed that the apparent emotions of the litigants were preventing the adoption of a mutually satisfactory method of controlling access through the gates, and as a consequence, it became necessary to determine the reasonableness of the interference.

The evidence presented bearing upon the issue of reasonableness was not so much in dispute as it was simply representative of the divergent points of view of the parties. Plaintiffs' evidence was directed to their claimed high degree of inconvenience in having to carry a key at all times, having to furnish one to family members and agents, and having to in some way control the key so as not to be suspect of any losses defendants might suffer by reason of unauthorized persons entering upon the land. The plaintiffs also challenged the effectiveness of a locked gate against those determined to trespass for the preconceived purpose of vandalism or theft. On the other hand, defendants' evidence went to the claimed beneficial effect the locks would have in minimizing future vandalism and theft by thwarting the entry of would-be trespassers.

The determination of the reasonableness of locked gates is necessarily gov-erned by the facts of each case and in the instant case it appears that the trial judge carefully weighed the relative merits of the use of locks against the resultant interference with the easement. We are of the opinion that the evidence supports his wise and judicious exercise of discretion in determining as he did that the status quo should be maintained and his consequent order that the locks be removed.

Affirmed. Costs to plaintiffs.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

---

9. 28 C.J.S. Easements § 96.

10. Supra, footnote 2.

11. Supra, footnote 9.