Edward W. WYKOFF, Nancy C. Wykoff, J. D. Apgood, and Patricia J. Apgood, Plaintiffs and Appellants,

v.

Ida Rose BARTON, Harlow B. Peterson, Sandra Peterson, Utah Power & Light Co. and Mountain States Telephone and Telegraph Company, Defendants and Respondents.

No. 17287.

Supreme Court of Utah.

May 19, 1982.

Stephen G. Morgan, Salt Lake City, for plaintiffs and appellants.

Ralph H. Klemm, Salt Lake City, for Barton.

William D. Marsh, Ogden, for Peterson.

Sidney G. Baucom, Salt Lake City, for Utah Power.

David S. Dolowitz, Thomas T. Billings, Salt Lake City, for Mtn. States.

DURHAM, Justice:

This case was brought as a quiet title action to determine the rights of various parties in a right-of-way reserved by deed over a parcel of real property owned by defendant Ida Rose Barton. In 1973, a Utah corporation known as BAFCO, Inc. (not a party to this action), conveyed a parcel of real property to G. Devon Barton (now deceased) and the defendant Ida Rose Barton by warranty deed. The grantor reserved to itself a right-of-way over a portion of the property in the following language:

> RESERVING unto the grantor, its successors and assigns, a right of way for ingress and egress over the Easterly 25.0 feet of said property.

In 1974, BAFCO, Inc., conveyed an adjacent parcel of real property to the plaintiffs, Edward W. and Nancy D. Wykoff, by warranty deed. The conveyance included the right-of-way reserved in the Barton deed. Also in 1974, BAFCO, Inc., conveyed another parcel of real property, adjoining the Wykoff property on the north, to plaintiffs J. D. and Patricia J. Apgood by warranty deed, without including therein any grant of the right-of-way referred to in the Barton deed. In 1979, BAFCO, Inc., conveyed by quit-claim deed a right to use the right-of-way in question to the Apgoods. The court below found, and the record shows, that at the time of the Barton conveyance, the grantor intended to reserve a private right of use for ingress and egress, including foot and vehicular traffic associated with the use of his residential property and the transport of farm animals permitted by local zoning. Neither the language of the reservation in the Barton deed, nor the circumstances surrounding its making, indicate that it created a general right-of-way for all purposes. The president of BAFCO, Inc., testified at trial that his intent in the conveyance to Wykoff of the right-of-way use over the Barton property was "to allow him a right of way to bring his equipment and items that he may want to bring in and maintain ditches or vehicles or whatever that he intended to go to the back of his property." There was no intent to permit the construction of a street or roadway, either at the time of the Barton deed or the later transfers to plaintiffs.

During the years after the conveyance to them, and up until sometime in 1978, the Bartons maintained fences around their entire piece of property, including the right-of-way portion, and consistently used it for grazing livestock and for gardening. In fact, Mrs. Barton installed a shed and a chicken coop which impinged to some extent on the right-of-way. The Bartons had purchased the property with a view to keeping livestock and farming and had been informed (by their real estate agent) at the time of the purchase that the right-of-way would be used only for ingress and egress by an occasional vehicle to mend fences or to convey animal stock.

No attempt was made to use the right-of-way for any purpose until 1978, when plaintiffs requested access for a horse to be pastured on the Wykoff property. A disagreement arose over the scope of the use which plaintiffs could make of the right-of-way, which resulted shortly thereafter in plaintiffs' removing defendant's fence and placing sand and gravel on the right-of-way

preparatory to the construction of a road. The sand covered an irrigation ditch which had been used by defendant to get water onto her pasture from adjoining property.

Without a fence, defendant was unable to keep livestock on her property. Plaintiff Wykoff's intent was to construct a road on the right-of-way to provide access to the rear portion of his property in order to subdivide it and build homes thereon. Defendant resisted any further construction on the right-of-way, and this lawsuit resulted.

The trial court found that plaintiffs are entitled to have the right "to use and enjoy the right-of-way for ingress and egress, not inconsistent with the rights of the owner, Ida Rose Barton, and without unreasonable interference with the right of said owner to use her property to the fullest extent." Plaintiffs were permitted by the court's judgment to place a surface on the right-of-way that would make it passable in all weather, and to have a private right of use for "foot and vehicular traffic associated with the use of a residence," and for the transportation of farm animals. Defendant was permitted to enclose portions of the right-of-way by fence and/or gates to keep her animals from straying and to provide access for ingress and egress to those entitled to use it. The court's judgment permitted chains and locks on the gates so long as all persons entitled to use the right-of-way are given keys. Further relief was provided which is not challenged on this appeal.

The parties are in agreement as to the controlling principles of law and appellants' sole challenge is to their application by the trial court to the facts in this case. The issue which this Court is asked to resolve is whether the maintenance of fences and/or locked gates across the right-of-way is an unreasonable interference with the use granted to plaintiffs in their deeds.

1. At trial, plaintiffs appeared to place reliance on some broad language in the Wykoff deed and in the quit-claim deed to Apgoods concerning the right-of-way. However, in both instances, BAFCO could convey no more to

■ This Court has on a number of occasions considered and defined easements based on deeds and grants, and it is clear that a right-of-way founded on a deed or grant is limited to the uses and extent fixed by the instrument. *Nielson v. Sandberg*, 105 Utah 93, 141 P.2d 696 (1943). Thus, the plaintiffs are limited in their claims to whatever BAFCO, Inc., had reserved to itself in the Barton conveyance and could therefore convey to them.[1] In *Wood v. Ashby*, 122 Utah 580, 584, 253 P.2d 351, 353 (1952), this Court said:

> Since it is manifest that a grantee may receive only what a grantor has to give, defendants' rights are based upon a construction of the original ... deed ....
>
> It is generally conceded that a deed is to be construed most strongly against the grantor, and most favorably to the grantee. It is also established in this state that a deed should be construed so as to effectuate the intentions and desires of the parties, as manifested by the language made use of in the deed. Further, when the deed creates an easement the circumstances attending the transaction, the situation of the parties, and the object to be obtained are also to be considered. [Citations omitted.]

The *Wood* decision goes on to comment that if the provisions of the deed leave some doubt as to their meaning, the court may also look to the practical construction placed upon the instrument by the parties.

The trial court thus properly found that plaintiffs had only a right of ingress and egress, as reserved in the Barton deed, and went on to apply the general principle that:

> [A servient owner] has all the rights and benefits of ownership consistent with the easement; the right to use the land remains in him, without any express reservation to that effect, so far as such right does not conflict with the purpose and character of the easement. [Citations omitted.]

plaintiffs than it had reserved to itself out of the Barton grant, and the trial court correctly found that the language in the Barton deed was controlling on the scope of the easement.

25 Am.Jur.2d, *Easements and Licenses* § 89 (1966). In *North Union Canal Company v. Newell*, Utah, 550 P.2d 178, 180 (1976), the Court expressed that principle even more broadly, pointing out that owners of property subject to an easement "may use their property in any manner they please so long as they do not unreasonably restrict or interfere with the proper use of the .... easement."

▆▆▆ Whether or not a restriction on access is unreasonable is a question of fact. *McBride v. McBride*, Utah, 581 P.2d 996 (1978); 25 Am.Jur.2d, *Easements and Licenses* § 89 (1966). In this case, the trial court apparently weighed carefully the intent of the parties as it appears in the testimony in the record, the language in the Barton deed describing the right-of-way, the use to which the property had been put by Bartons since the deed, and the reasonableness of permitting locked gates with keys to plaintiffs to permit ingress and egress. The fact that the property in question has consistently been used for agricultural purposes may also have been a legitimate consideration for the trial court. Although the Utah cases have never spoken directly to the question, other jurisdictions have looked at the special requirements of agricultural lands. In *Chesson v. Jordan*, 224 N.C. 289, 293, 29 S.E.2d 906, 909 (1944), the Supreme Court of North Carolina observed:

... a mere private easement for the general purpose of ingress and egress and across agricultural lands carries with it no implication of a right to deprive the owner of the servient estate of the full enjoyment of his property. It is subject only to the right of passage. Hence, he may erect gates across the way when necessary to the reasonable enjoyment of his estate, provided they are not of such a nature as to materially impair or unreasonably interfere with the use of the lane as a private way for the purposes for which it has theretofore been used.

The trial court in this case specifically found that it was necessary and reasonable for defendant to maintain locked gates to keep livestock on her property, and that such gates were not an unreasonable restriction upon plaintiffs' right to ingress and egress. It is worthy of note that plaintiffs' proposal (that a fence be constructed along the borders of the right-of-way and defendant's property) would have the practical effect of depriving defendant entirely of the use of her land, a result rejected in *Weggeland v. Ujifusa*, 14 Utah 2d 364, 384 P.2d 590 (1963). Finally, a review of cases from other jurisdictions cited by appellants demonstrates that those cases are distinguishable in each instance on their facts. The trial court's findings of fact are amply supported by the record, and should not be overturned by this Court. *Metropolitan Investment v. Sine*, 14 Utah 2d 36, 376 P.2d 940 (1962).

The judgment of the trial court is affirmed. Costs to respondents.

HALL, C. J., and STEWART and OAKS, JJ., concur.

HOWE, Justice, (dissenting):

I dissent. I believe that justice would be better served if the plaintiffs' proposal were adopted that they be allowed to fence the west side of the right-of-way to contain Barton's livestock and that the right-of-way be left open and unobstructed.

Barton does not dispute that the plaintiffs have the right to construct and maintain a graveled roadway for the ingress and egress of motor vehicles to and from their property. That being so, the east 25 feet of the Barton property is committed to a use which is no longer consistent with that of pasturing animals. It is a graveled roadway for the access of both plaintiffs and Barton. Therefore, it is impractical and inequitable to endeavor to preserve the roadway as part of a pasture for Barton's livestock as the trial court attempted to do. We held in *Stevens v. Bird-Jex Company*, 81 Utah 355, 18 P.2d 292 (1933), that the owner of the servient estate may make use of the right-of-way in a manner "not inconsistent with the special use for which the easement was granted" and that he must not impair the enjoyment of the easement

by the owner of the dominant estate. Later, in *Weggeland v. Ujifusa*, 14 Utah 2d 364, 384 P.2d 590 (1963), we stated that the owner of the servient estate may use the right-of-way in any manner which does not interfere with the privilege granted to the owner of the dominant estate. In the instant case, the trial court in its Judgment recognized these principles of law but then erroneously also recognized their antithesis by stating that:

> The plaintiffs and others similarly situated shall have the right to use and enjoy the right-of-way for ingress and egress, not inconsistent with the rights of the owner, Ida Rose Barton, and without unreasonable interference with the right of said owner to use her property to the fullest extent.

I do not believe that the quoted material properly applies the law to the facts. It is Barton's use which must not be inconsistent with the use for which the easement was granted and which must not interfere with the use of the easement by plaintiffs. The majority opinion recognizes this sound principle by its quote from 25 Am.Jur.2d Easements and Licenses, § 89. Barton's use must be compatible with the right-of-way. That will not be so under the ruling of the trial court.

BAFCO reserved a general right-of-way in the deed to the Bartons, and it later granted this same general right-of-way to the plaintiffs. It was a general right-of-way because it was specified to be for ingress and egress without restriction, except as to its width (25 feet). The Bartons and BAFCO could have, but did not, use limiting language in the reservation which would restrict its frequency of use, purpose of use or mode of travel. In view of the clear and unambiguous language of the reservation, I seriously question the consideration of matters in the majority opinion which are in derogation of the clear and unqualified language of the reservation in the Barton deed and in the subsequent grants to the plaintiffs. See generally on this point 25 Am. Jur.2d Easements and Licenses, § 75, and annotation at 3 A.L.R.3d 1262, § 3[a]. Furthermore, contrary to the majority opinion, the fact that Barton's livestock grazed the right-of-way for several years before the plaintiffs had acquired their rights-of-way and before they had any need to use it, is not a proper element for consideration in this case. Abandonment or non-user was not pleaded nor claimed by Barton and could not have been successful.

Turning now to the matter of the locked gate across the right-of-way, it should be readily apparent that if houses are to be built on the plaintiffs' property as they propose, access on a daily basis to their property will be needed along the right-of-way. Since the right-of-way can produce no feed for Barton's livestock, no purpose is served in allowing her animals to roam the easement, thus requiring the maintenance of a locked gate. In fact, additional gates will be required at the entrance of plaintiffs' property which must be unlocked and then locked again whenever a vehicle passes through. A driver of a vehicle desiring to pass through the two gates will be required four times to stop his vehicle, alight therefrom, open or close a gate and then re-enter the vehicle. Keys will have to be provided all family members, guests and service and delivery vehicles. Plaintiffs cannot obtain a building permit to erect a house if there are any locked gates. All of this inconvenience and damage is inflicted on the plaintiffs without any offsetting benefit being derived by Barton.

In *North· Union Canal Co. v. Newell*, Utah, 550 P.2d 178 (1976), a case involving the fencing of a right-of-way with gates at each end and at intervals between the two ends, this Court discussed the conflict of the interests of the owners of the dominant estate and the servient estate and remarked that "The object to be desired is to find some accommodation of those conflicting interests, to the maximum advantage and to the minimum disadvantage of both parties." There, by a divided opinion of this Court, the owner of the servient estate was allowed to maintain a fence across a right-of-way with locked gates provided. But the easement was in a canal and along its banks. It had been granted for the purpose.

of cleaning and maintaining the canal and its use by the owner of the dominant estate was infrequent—not on a daily basis as in the instant case when houses are built on the plaintiffs' property. See also *McBride v. McBride*, Utah, 581 P.2d 996 (1978) where we affirmed a trial court's determination not to permit locked gates across an easement over agricultural lands, characterizing it as a "wise and judicious exercise of discretion." It should also be observed that easements across agricultural lands are often not graveled and are not used on a daily basis for access to a residence. That is not so here.

If we are to find the "maximum advantage and the minimum disadvantage" to each of the parties, the proposal of the plaintiffs to fence the right-of-way and thus eliminate the locked gate comes much closer to attaining that object than the solution arrived at by the trial court and approved by a majority of this Court which seriously depreciates the value of the easement. It is not valid to argue, as does the majority opinion, that the fence "would have the practical effect of depriving [Barton] entirely of the use of her land, a result rejected in *Weggeland v. Ujifusa*, 14 Utah 2d 364, 384 P.2d 590 (1963)." Barton may use the right-of-way for foot and vehicular traffic to reach and service the rear of her property and the animals kept thereon. She is asked only to honor the reservation in her deed of which she was fully aware when she purchased her property which limits her from using 25 feet of her property in a manner inconsistent with an unqualified right-of-way.