**UNITED STATES of America,
Plaintiff-Appellee,**

**Kern W. Schumacher and Morris H. Kulmer, d/b/a Freeport West,
Plaintiffs-in-Intervention-Appellees,**

v.

**Robert P. O'BLOCK, Gordon M. Olch, d/b/a Freeport Center Associates; and James F. Hannan, Defendants-Appellants.**

No. 84–1854.

United States Court of Appeals,
Tenth Circuit.

April 17, 1986.

Daniel L. Berman (Thomas R. Karrenberg and Peggy A. Tomsic with him on

brief), Berman & Anderson, Salt Lake City, Utah, for defendants-appellants.

Jay D. Gurmankin (Christopher M. Mislow with him on brief), Giauque & Williams, Salt Lake City, Utah, for plaintiffs-in-intervention-appellees Kern W. Schumacher and Morris H. Kulmer, d/b/a Freeport West.

Joseph W. Anderson (Brent D. Ward, U.S. Atty. with him on brief), Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee U.S.

Before BARRETT, SEYMOUR and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This appeal concerns the extent and reasonableness of a restriction on the use of an easement. The servient tenants (defendants-appellants Robert P. O'Block and Gordon M. Olch, d/b/a Freeport Center Associates, and James F. Hannan, sometimes referred to collectively as Freeport Center) erected a fence down the length of Seventh Street, the site of the easement. Two of the dominant tenants (plaintiffs-appellees United States (government) and Kern W. Schumacher and Morris H. Kulmer, d/b/a Freeport West (Freeport West)), brought suit to have the fence removed. The district court granted summary judgment in favor of appellees and ordered the fence removed.

Appellant Freeport Center, as the servient tenant, concedes the correctness of the trial court's decision that a fence without gates was an unreasonable restriction upon the use of the easement by the dominant tenants, including the appellees. However, appellant contests that part of the district court's decision holding that, as a matter of law, a fence would constitute an unreasonable restriction on the easement even if gates were installed and/or alternative docking configurations were used by the dominant tenants. We reverse the grant of summary judgment insofar as the issue of the reasonableness of a fence with gates was decided in the absence of trial evidence, but we affirm the grant of summary judgment insofar as the district court rejected alternative docking arrangements as a matter of law.

The government acquired the property known as the Clearfield Naval Depot, which is located in Davis County, Utah, through condemnation in 1942. Over the years, the government constructed various warehouses with road and railroad access. In recent years, the government has sold various parts of the Depot. The government conveyed the property which now belongs to Freeport Center in May 1963. In the 1963 deed, the government reserved certain easements, including an easement along Seventh Street. In 1980, the government solicited bids for another part of the Depot contiguous to the property owned by Freeport Center. Freeport West was the successful bidder and the government conveyed this other part in May 1981, together with an easement providing the grantees access along Seventh Street. Thus, an easement exists in Seventh Street with the government and Freeport West as two of the dominant tenants, and Freeport Center as the servient tenant. There is no dispute as to the existence of the easement.

Shortly after the right to buy the property now comprising Freeport West was awarded to Freeport West, Freeport Center erected a fence down the west side of Seventh Street extending from C Street to G Street. The fence was parallel to land and buildings owned by the government and Freeport West, and contained no gates. The fence stood directly in the face of the dominant estate owners' property and severely hampered access to the appellees' loading docks. The government brought suit to force the removal of the fence and to enjoin Freeport Center from interfering with its easement on Seventh Street. Freeport West intervened, alleging antitrust violations, unfair competition, and interference with the easement. Freeport West sought partial summary judgment claiming that Freeport Center's fence unreasonably interfered with its easement and was unlawful. The government sought summary judgment on the same point. The trial

court granted the government's motion for summary judgment and Freeport West's motion for partial summary judgment, concluding that the fence was an unreasonable restriction on the use of the easement. The district court granted injunctive relief and the fence was removed.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985); *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Summary judgment is inappropriate if an inference can be deduced from the facts which would allow the non-movant to prevail. *Thomas v. United States Department of Energy*, 719 F.2d 342, 344 (10th Cir.1983). The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir.1980). Where different ultimate inferences may properly be drawn, the case is not one for a summary judgment. *Id.* at 1377. Finally, when reviewing a summary judgment ruling, we consider the record in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Maughan*, 758 F.2d at 1387; *Bee*, 744 F.2d at 1389.

■ The government brought its action in United States District Court for the District of Utah pursuant to 28 U.S.C. § 1345[1]. Absent controlling federal legislation or rule of law, questions involving real property rights are determined under state law, even when the United States is a party. *See Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–81, 97 S.Ct. 582, 590-92, 50 L.Ed.2d 550 (1977); *Amoco Production Co. v. United States*, 619 F.2d 1383, 1389

n. 4 (10th Cir.1980). Because there is no applicable federal law involved in this case, the law of Utah governs the dispute between the government and appellants. Freeport West brought its claim for interference with the easement as a pendent or ancillary claim, and such claim must also be decided according to Utah law.

The Utah Supreme Court has considered the reasonableness of fences or locked gates as a restriction on the dominant tenant's use of an easement. In *Wykoff v. Barton*, 646 P.2d 756 (Utah 1982), the Utah court was asked to determine whether the maintenance of fences or locked gates across a right-of-way was an unreasonable interference with the use of the dominant tenant's easement. The Utah court stated:

> Whether or not a restriction on access is unreasonable is a question of fact. *McBride v. McBride*, Utah, 581 P.2d 996 (1978); 25 Am.Jur.2d, Easements and Licenses § 89 (1966). In this case, the trial court apparently weighed carefully the intent of the parties as it appears in the testimony in the record, the language in the Barton deed describing the right-of-way, the use to which the property had been put by Bartons since the deed, and the reasonableness of permitting locked gates with keys to plaintiffs to permit ingress and egress.

*Wykoff v. Barton*, 646 P.2d at 759. The Utah Supreme Court affirmed the trial court's decision to allow the servient tenant to fence the right-of-way provided the dominant tenants be given keys to padlocked gates.

Under different facts, the Utah court has ruled that locks placed on gates located at both ends of a right-of-way were an unreasonable interference with the dominant estate. *McBride v. McBride*, 581 P.2d 996 (Utah 1978). The court deferred to the trial judge's conclusion which was formed after hearing evidence regarding frequency of use, the relative convenience and the

---

1. 28 U.S.C. § 1345 provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

degree of protection afforded by the gates. The court recognized that the determination of the reasonableness of locked gates is governed by the facts of each case and that the trial judge properly weighed the merits of the locked gates against their interference with the easement. *McBride*, 581 P.2d at 998.

Finally, in *North Union Canal Co. v. Newell*, 550 P.2d 178, 179–80 (Utah 1976), the court indicated that the rights of the dominant and servient tenants must be balanced, and that, at best, an accommodation of interests should occur. The court noted that the servient tenant may use its property to its fullest enjoyment so long as the use is not inconsistent with the easement. In *North Union Canal*, the court allowed the servient tenants, who owned the land near a canal, to keep a fence if they maintained gates at reasonable intervals so that the dominant tenant would have access to repair and maintain the canal. The majority opinion and the concurring opinion both recognized the need for the trial court to take evidence regarding the placement of gates. *North Union Canal Co.*, 550 P.2d at 180–81 (Henriod, C.J., concurring).

These Utah cases demonstrate that the reasonableness of a restriction on an easement, such as the erection of a fence, generally is a factual issue. Utah's position is in accord with what appears to be the great weight of authority. Annot., 52 A.L.R.3d 9, § 2(a) (1973 and 1985 Supp.) The Utah

cases further indicate that the relative merits of the use of a fence with gates must be weighed against the resultant interference with the easement. To the extent that the effect of a restriction on an easement is disputed, or differing inferences can be drawn from facts properly before the court, summary judgment is improper.

■ Examination of the record reveals that very little evidence was offered as to the effect of a fence with gates. The evidence that was presented is disputed or gives rise to differing inferences about the matter. For example, both sides cite to the same portion of one witness' deposition testimony in support of their positions.[2] While that deposition testimony could support the position of either or both sides, it must be viewed in the light most favorable to appellants and it clearly precludes summary judgment on the issue of reasonableness.

Nor does the remainder of the record legally establish what effect a fence with gates would have on the use of the easement by the dominant tenants. The government and Freeport West contend that even a fence with gates would constitute a major, unreasonable interference with their use of the easement. Freeport Center, on the other hand, suggests that a fence with gates would amount to nothing more than a minor inconvenience to the dominant tenants, rather than an unreason-

2. When the witness was asked about the practicality of using a fence with gates, the following exchange took place:
WITNESS: Well, it would be a nuisance for sure to try to operate that way, and, yes, it would be detrimental to our business. To ask a tenant to open and close those gates may or may not be a problem. I don't know. I guess we would have to ask a user. I think he would rather take a building without those constraints than one with it, but that's just my opinion.
MR. PATTEN: Is it your view of the matter that the most practical solution, most beneficial solution to you is for Freeport Center to move the fence to the other side of Seventh Street?
. . .
WITNESS: Yeah. I don't care what they do with that fence as long as we have ingress and egress and have the buildings to use the way we

understood we were going to get them when we bought them.
MR. PATTEN: Well, see, that's where I'm having trouble is because you say you don't care what we do with the fence, but from your previous answers, you do care what we do with it in terms of how many gates and how wide they are and how many lock restraints we—
MR. GURMANKIN: I think he's saying, Warren, he doesn't care what you do with the fence as long as you get rid of it.
WITNESS: Yeah. When you said moving it, that's exactly what I had reference to. If you want to get rid of it, that would thrill us, or if you want to put it on your side of the street next to your buildings so we have ingress and egress, we'd be pleased with that.
Record at Vol. XI, pp. 81–82.

able restriction. While it is unclear how adversely a fence with gates would affect the dominant tenants, that issue can be resolved at trial.

While the record contains a factual issue on the effect of a fence with gates, the same cannot be said concerning the issue of requiring the dominant tenants to install alternative docking configurations. We realize that Freeport Center should have the use and enjoyment of its property to the highest degree possible not inconsistent with the easement, and that an accommodation of the competing interests of Freeport Center and appellees is desired. *North Union Canal Company v. Newell,* 550 P.2d at 179–80. However, these principles cannot be relied upon to force the dominant tenants to make structural modifications to accommodate the servient tenant.

The implementation of an alternative docking configuration would require the dominant tenants to make material modifications in their existing buildings with the attendant consequences of additional expense, loss of use during construction, and change in method of operation. The owner of the servient estate may not use the property in such a manner as to lead to a material increase in the cost or inconvenience to the easement holder's exercise of his rights, and such use constitutes a material impairment of the easement interest. *United States v. Sea Gate, Inc.,* 397 F.Supp. 1351, 1358 (D.N.C.1975); *Texon, Inc. v. Holyoke Machine Company,* 8 Mass.App. 363, 394 N.E.2d 976, 978 (1979). The district court was correct in deciding that, as a matter of law, requiring the dominant tenants to incur the material cost and inconvenience of altering their property so as to use the easement would be an unreasonable restriction on the use of such easement.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.