2003 UT App 403

**LUTHERAN HIGH SCHOOL ASSOCIATION OF THE GREATER SALT LAKE AREA, a Utah non-profit corporation dba Salt Lake Lutheran High School, Plaintiff and Appellant,**

v.

**WOODLANDS III HOLDINGS, LLC, a Utah limited liability company; Bedford Property Investors, Inc., a Maryland corporation; JDJ Properties, Inc., a Utah corporation; The Woodlands Business Park Association, a Utah non-profit corporation; Wasatch Property Management, Inc., a Utah corporation; and John Does 1–1000, Defendants and Appellees.**

No. 20020808–CA.

Court of Appeals of Utah.

Nov. 21, 2003.

---

Robert M. Taylor, Taylor Adams Lowe & Hutchinson, Salt Lake City, for Appellant.

P. Bruce Badger, Diane H. Banks, and Matthew L. Anderson, Fabian & Clendenin, Salt Lake City, for Appellees.

Before JACKSON, P.J., DAVIS and ORME, JJ.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Lutheran High School (Lutheran) appeals the district court's grant of summary judgment to Woodlands III Holding, LLC (Woodlands) and the district court's denial of Lutheran's summary judgment motion. We affirm.

## BACKGROUND

¶ 2 In 1983, Woodlands Investment Co., a Utah limited partnership, owned a tract of land (Tract A) in Salt Lake City. Woodlands Associates (Associates), a Utah limited partnership, owned the tract (Tract B) immediately west of Tract A. In 1983, Woodlands Investment Co. and Associates entered into a Declaration of Easements, Covenants and Restrictions (the 1983 declaration). In the 1983 declaration, Woodlands Investment Co. and Associates granted reciprocal non-exclusive easements appurtenant to and across their respective tracts. The easement that benefits Tract B and burdens Tract A is the subject of this dispute.[1] The 1983 declaration reads in part:

> Woodlands grants to Associates a nonexclusive easement appurtenant to and across Tract A for the purpose of allowing vehicular access between the public streets and any and all parking areas or roadways

1. *See* Appendix, depicting the layout of the tracts, structures and rights of way at issue. This rendering is not to scale.

and lanes situated on Tract B, provided, that the foregoing right of access shall be limited to use for such purposes and to such extent as may be customary for use of Tract B for commercial purposes (including, but not limited to, reasonable and customary deliveries).

The 1983 declaration further contemplates that the zoning for Tract B may change over time, that a building complex will be built on Tract B, including a theater-restaurant, a health club, a parking ramp with lower and upper levels, and parking areas and roadways. The 1983 declaration is for the benefit of the parties and their tenants, concessionaires, customers, invitees and guests.

¶ 3 The development of Tract B proceeded, but with a lower density than originally contemplated by the 1983 declaration. Various entities developed office towers, parking structures, and a retail building.

¶ 4 One of those entities, Woodlands IV Holdings, L.L.C., built an office tower on Tract C, immediately north of Tract B. Those traveling to Tract C frequently traveled over the easement across Tracts A and B to access Tract C. Further, a parking structure was also built on Tract C, and Grants of Easement were made to provide for use of the parking facility for Tract B tenants and invitees.

¶ 5 In 1992, Lutheran, the plaintiff and appellant in this case, purchased Tract A. By 1999, Woodlands solely acquired all of Tract B, and acquired Tract C in conjunction with Woodlands IV Holdings, LLC. Lutheran filed suit in November 1996, alleging the easement was being overburdened. Both Lutheran and Woodlands filed motions for summary judgment. The district court denied Lutheran's motion and granted Woodlands's motion. However, in its order, the trial court enjoined all Tract C tenants from using the easement because Tract C clearly does not benefit from the easement granted in the 1983 declaration.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Lutheran challenges the district court's grant of summary judgment to Woodlands and the district court's denial of Lutheran's summary judgment motion.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). When reviewing a district court's denial of summary judgment, we grant no deference to the district court's legal conclusions and review them for correctness. *Schaerrer v. Stewart's Plaza Pharm., Inc.*, 2003 UT 43, ¶ 14, 79 P.3d 922, 2003 Utah LEXIS 105.

## ANALYSIS

¶ 7 Lutheran argues the district court erred when it concluded as a matter of law that the dominant estate had not been expanded and that the easement had not been overburdened. It argues the dominant estate was in fact expanded because (1) Tract C was joined to Tract B, and Tract C's tenants routinely used the easement to access Tract C; and (2) because a parking structure, although used exclusively by Tract B tenants, was built on Tract C.

### I. Tract C Use of the Easement

¶ 8 We begin our discussion of Tract C use of the easement by noting that the district court already granted Lutheran injunctive relief requiring Woodlands to prohibit Tract C tenants and patrons from using the easement. Thus, Lutheran's challenge may best be characterized as a challenge to the adequacy of the remedy imposed by the district court. Lutheran challenges the form of the injunction on grounds that, when attempting to regulate traffic across the easement, it is impossible to distinguish between proper and improper use. Accordingly, Lutheran argues, the easement granted in the 1983 declaration ought to be extinguished altogether. *See* Jon W. Bruce & Lames W. Ely, Jr., The Law of Easements and Licenses in Land, § 10:26 (2001) ("[If] a court cannot separate the wrongful activity from appropriate usage for purposes of issuing an injunction ... [it] may declare the easement terminated....").

¶ 9 However, Lutheran fails to demonstrate that the district court abused its discretion in issuing the injunction pursuant to

its equitable powers. *See Hunsaker v. Kersh*, 1999 UT 106, ¶ 6, 991 P.2d 67 (explaining that equitable powers give district court discretion in fashioning injunctive relief). Based on the record before us, we cannot say that the trial court is incapable of separating the proper from improper use of the easement, or that Woodlands cannot conform to the terms of the injunction by adequately regulating the easement's use. Lutheran's assertions to the contrary are unavailing, particularly where it argues for such an extreme remedy as the extinguishment of an easement. Thus, we conclude the district court's remedy is adequate and Lutheran's challenge fails.[2]

## II. Parking Structure

█ ¶ 10 Lutheran argues at least two reasons why the Tract C parking structure overburdens the easement. Lutheran argues an appurtenant easement cannot be used to serve a non-dominant estate. "The accepted rule is that the language of the grant is the measure and extent of the right created; and that the easement should be so construed as to burden the servient estate only to the degree necessary to satisfy the purpose described in the grant." *Weggeland v. Ujifusa*, 14 Utah 2d 364, 384 P.2d 590, 591 (1963).

¶ 11 Lutheran cites, among other secondary sources, Jon W. Bruce & Lames W. Ely, Jr., The Law of Easements and Licenses in Land, § 8:11 (2001), which states, "[t]he dominant owner may not use an appurtenant easement to benefit any property other than the dominant estate. An attempted extension of the easement to serve nondominant land represents an overburden of the servient tenement, regardless of the amount of usage." (Footnotes omitted.) That treatise further states, "[t]he owner of a dominant estate may not extend the easement to accommodate land that the servitude was not originally intended to serve. Hence, an easement appurtenant does not benefit nondominant land that the easement holder now owns or property that the easement holder may

subsequently acquire." *Id.* § 2:8 (footnotes omitted). These sources, along with non-Utah authority, Lutheran argues, point to a bright-line rule that the owner of a dominant estate may not use an easement to cross the dominant estate in order to access a non-dominant estate, since the original grant did not intend the non-dominant estate to benefit from the easement. Such use, Lutheran argues, automatically overburdens the easement by improper use, regardless of the intensity of the improper use.

¶ 12 However, even if we acknowledged Lutheran's supposed bright-line rule, it would not apply here because present use of the easement is confined strictly to the benefit of Tract B.[3] Although the parking structure is built on Tract C, it is used solely by tenants and patrons of Tract B, specifically those headed for Tower III. Thus, the easement is not being overburdened by use headed for a non-dominant parcel.

¶ 13 We need not resort to bright-line rules or other general easement principles, however, because the plain language of the 1983 declaration itself permits use of the easement "for such purposes and to such an extent as may be customary for use of Tract B." The parking structure, although situated on Tract C, unquestionably serves the "customary . . . use" of Tract B.

¶ 14 Further, Lutheran cites us to a great deal of history surrounding the development of Tracts B and C. For example, the zoning authorities required, for development of Tower III on Tract B, that a parking structure be built on Tract C. This requirement, Lutheran argues, demonstrates that the development of Tract B went beyond what was contemplated in the 1983 declaration. The 1983 declaration contemplated some development of Tract B, Lutheran argues, but does not contemplate such intense development that Tract B's use of the easement would spill over to Tract C.

█ ¶ 15 We are not persuaded that later municipal action with respect to the zoning

---

**2.** Our conclusion that the remedy is adequate based on the record before us should not be read to preclude the district court from revisiting its injunction if it determines, based on new evidence, that the injunction is inadequate or that conditions have sufficiently changed.

**3.** *See* section I, above.

and building permits on Tracts B and C relates to the intended scope of the 1983 declaration at the time of the grant. Such subsequent action has no bearing on what type and intensity of use the parties to the grant intended, nor does it indicate the actual amount of use of the easement. Rather, Utah law looks to the language of the grant, the circumstances attending the transaction, the situation of the parties, the state of the thing granted, and the object to be obtained, construing the instrument most strongly against the grantor and most favorably to the grantee, to determine what use is permitted. *See Wykoff v. Barton,* 646 P.2d 756, 758 (Utah 1982). An overburdening of an easement by the dominant estate may only occur if use of the easement substantially increases use of the servient estate beyond that contemplated by the parties at the time of the grant. *See Wood v. Ashby,* 122 Utah 580, 253 P.2d 351, 354 (1952).

¶ 16 The 1983 declaration itself contemplated a considerable amount of commercial development, much of which never transpired. The overall density of commercial development that actually occurred on Tract B is far less than that contemplated by the grant. Further, and more importantly, Lutheran did not present any evidence, giving rise to a genuine issue of material fact, that the actual use of the easement exceeded the use contemplated by the 1983 declaration.

¶ 17 Thus, Lutheran's challenges fail because it has not demonstrated that Woodlands's use of the easement "result[ed] in a substantial increase in the use of the servient estate other than that contemplated by the parties at the time of the grant." *Id.*

## CONCLUSION

¶ 18 The district court did not err in denying Lutheran's motion for summary judgment and granting Woodlands's motion for summary judgment because Woodlands did not overburden the easement. Tract C never properly benefitted from the easement, and the trial court properly enjoined use of the easement by Tract C tenants. The parking structure, while situated on Tract C, is used solely and strictly to benefit Tract B, a function contemplated by the language of the grant. The fact that municipal action may or may not have conditioned permission to build Tower III on the building of a parking structure on Tract C does not require the conclusion that the easement is overburdened. Rather, the district court properly looked to the use contemplated in the grant itself. When looking to that intended use, the district court properly concluded that actual use did not overburden the easement. Accordingly, we affirm.

¶ 19 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.